## JOHN B. TAYS ET AL. v. S. ECKER.

### No. 176.

**1. Landlord and Tenant — Construction of Clause in Lease. —** When a hotel is leased for a certain period, and the lease contains no special covenants whereby the lessor agrees to keep the premises in repair for the lessee; and where the lessee agrees to pay the rent in the manner and form stipulated in the lease, unless " said premises shall be destroyed or rendered untenantable by fire or other *unavoidable casualty*," and the said premises are condemned by an action of the city council as unsafe and untenantable, *held,* that such condemnation does not constitute such "unavoidable casualty" within the meaning of the clause in the lease.

**2. Same—"Unavoidable Casualties," what are— The Massachusetts Rule Adopted.—**"This phrase is in very common use in leases in this country, and has a well settled meaning. It does not signify mere want of repair, arising from lapse of time or improper use of premises. Neither does it include any injuries which may happen by reason of the common and ordinary use and occupation of the leased or adjoining premises. The term has a much more restricted meaning, and comprehends only damages or destruction arising from supervening or uncontrollable force or accident. By a strict definition, as applied to the subject matter, it signifies events or accidents which human prudence, foresight, and sagacity can not prevent, i. e., causes like fire, such as lightning, earthquakes, and wind, which usually result without any direct agency of the tenant, and which are ordinarily beyond human control." 3 Gray (Mass.), 325.

**3. Same—What Constitutes a Defense as to Future Rents.—**An actual appropriation or destruction of the premises under the right of eminent domain or police power will constitute a defense as to future rents.

APPEAL from the County Court of El Paso. Tried below before Hon. ALLEN BLACKER.

*M. W. Stanton,* for appellants.

No brief for appellee reached the Reporter.

NEILL, ASSOCIATE JUSTICE.—The rules prescribed for the preparation of a cause for submission having been fully complied with by the appellants, and there being no brief for the appellee on file, the statement in appellants' brief might be considered by us as acquiesced in as a proper

presentation of the case, and we might found our decision thereon without an examination of the record as contained in the transcript (Rules 40 and 41 of Courts of Civil Appeals), but in view of another trial we have considered the entire record.

This suit was brought in the County Court of El Paso County by the appellants, John B. Tays, Amelia Tays, and Maria Rohman, against the appellee, Sam Ecker, on the 28th of February, 1890.

The allegations contained in plaintiffs' petition are, substantially, that on the 31st day of December, 1886, plaintiffs made and entered into a written lease and agreement, whereby they, in consideration of the sum of $16,000, to be paid as therein stipulated, leased and let to Sam Ecker certain real estate and improvements thereon, situated in the city of El Paso, Texas, known as the " Old Central Hotel," for a term of forty months, commencing on the 1st day of January, 1887, and expiring on the 30th day of April, 1890. That by said lease the appellee bound himself and agreed to pay appellants the sum of $16,000 in installments as follows, $400 at the end of each succeeding month thereafter, until the termination of the lease and the entire sum of $16,000 should be paid. That it was stipulated that each installment after it became due and demand made therefor should bear interest at the rate of 12 per cent per annum, and that an express lien was given in the lease on the property in the leased premises to secure the payment of the rents. It was averred that the lease, which was attached to and made a part of plaintiffs' petition, contained divers other covenants and stipulations providing for forfeiture of lease, the re-entry of appellants, etc., and that appellee " should lawfully, quietly hold and occupy said premises during said term, without let, hindrance, or ejectment or molestation by appellants, their heirs, assigns, or any person lawfully claiming under them." That appellee was in possession of the leased premises when the lease was executed, and pursuant thereto continued in possession thereof, and was in such possession when the suit was instituted, and that from time to time he paid appellants the installments of rent as they fell due, up to and including the entire month of November, 1889, and also $200 on December's rents for that year, but that thereafter he made default and failed to pay for said month of December and the installment due at the end of January, 1890. That appellants had made demand on appellee for said rents as provided in the lease, and that he failed to pay the same. Appellants prayed judgment for $600, for costs of suit, etc.

On May 19, 1890, the appellee filed his first amended original answer, wherein he interposed a general exception and a number of special defenses, among which are, substantially, the following: That if appellee ever rented the premises described in appellants' petition, he rented them for the purpose of entertaining and lodging travellers, and that appellants represented to appellee that said building and premises were suited

for said purpose, and that he relied upon said representations and believed them to be true, but that the same were fraudulent, false, etc.; and that afterwards the city of El Paso, a municipal corporation, proceeded under an ordinance of the city to condemn said building as a nuisance, and ordered the same torn down, and that therefore appellee vacated the building and tendered it back to appellants.

That if he ever rented said premises in the manner and form alleged by appellants, by the conditions of said lease it was expressly provided that in case said premises should be destroyed or rendered untenantable by *fire or other unavoidable casualties*, that appellee was relieved from the liability of the rent of the premises. That said building, by unavoidable casualties, had been rendered untenantable, and was so on the 1st day of December, 1889, and has been so ever since. That when he discovered the condition of said building he at once notified appellants of the fact, and tendered it to them; that at said date said building was in such a dilapidated condition as rendered it liable to fall at any time, making it unsafe for either man or beast, and that the building has remained in such condition from said date, and on that account wholly unfit for the purpose for which it was rented, to-wit, a hotel. That said building was examined by careful and competent architects, acting under the directions of the city council, and was pronounced by them wholly unsafe, and appellee was notified that said building was to be torn down, etc., by reason of which appellee averred that he was no longer liable for said rents.

The written lease described in the pleadings is in the usual form, containing the ordinary covenants, but contains no warranty as to the condition of the leased premises. As to unavoidable casualty, it contains the following stipulation, viz.: "And the party of the second part, for himself, his executors, administrators, and assigns, covenants and agrees with said first parties, their heirs and assigns, as follows, that is to say, that said second party will pay said installments, and each and every one of them, in the manner aforesaid, except said premises shall be destroyed or rendered untenantable by fire or other unavoidable casualty." The lease also provides, that said premises are to be delivered up in as good order and condition as they were at the time of the execution thereof, reasonable use and ordinary wear and tear thereof and damage by fire or any other unavoidable casualty excepted. It provides against waste, and that all repairs and improvements shall be placed on the premises by appellee at his own expense, the appellee expressly agreeing to accept the property leased in its condition at the date of lease, and that no claim of damages should thereafter be made by appellee for any loss he or any one else might sustain by reason of any defects or condition of said property leased.

Exceptions of appellants to all of the special defenses plead by appellee were sustained, except those as to fraud and unavoidable casualty herein above set forth.

The cause was tried before a jury, who returned a verdict for appellee, upon which the judgment was rendered from which this appeal is prosecuted. The court refused to submit the issue of fraud, and instructed the jury to find for appellants unless their claim for rents was defeated by matters set up by appellee in confession and avoidance. Therefore the only questions presented to this court arise upon his plea of unavoidable casualty.

It is wholly unnecessary for us to consider all of the assignments urged by appellants' counsel in his able and elaborate brief.

Appellants urged as an exception to appellee's answer, that it appeared from the allegations contained therein that no action of the city council, no condemnation of said building, nor the alleged dilapidated condition of the same, is or could be such an unavoidable accident or casualty as provided for in said written lease. This exception was overruled by the court, and its ruling is assigned as error. The assignment is well taken.

There being no covenant on the part of the appellants to keep the premises in repair, the appellee is liable on his covenant contained in the lease for the rents sued for, unless he can bring himself within the terms of the exception by which he is exempted from payment in case of the destruction of the premises or their being rendered untenantable by fire or other *"unavoidable casualty."* "This phrase"—unavoidable casualty—says the Supreme Court of Massachusetts (Willis v. Castles, 3 Gray, 325), "is in very common use in leases in this country, and has a well settled meaning. It does not signify a mere want of repair, arising from lapse of time or improper use of premises. Neither does it include any injuries which may happen by reason of the common and ordinary use and occupation of the leased or adjoining premises. The term has a much more restricted meaning, and comprehends only damage or destruction arising from supervening and uncontrollable force or accident. By a strict definition, as applied to the subject matter, it signifies events or accidents which human prudence, foresight, and sagacity can not prevent. The language of the proviso is ' in case the premises or any part thereof shall during said time be destroyed or damaged by fire or other unavoidable casualty,' that is, by causes like fire, such as lightning, earthquakes, and wind, which usually result without any direct agency of the tenant, and which are ordinarily beyond human control." We give the language quoted our unqualified approval, and adopt it as the law applicable to the case under consideration. We believe that an actual appropriation or destruction of the premises under the right of eminent domain or police power would have constituted a defense as to future rents.

If any unavoidable casualty rendered the premises untenantable, the facts showing the " supervening and uncontrollable force or accident which human prudence, foresight, and sagacity could not prevent," should have been clearly and specifically alleged by the appellee in defense of plaintiffs' action; and there being no such allegations in his answer as would

show an " unavoidable casualty," appellants' exception to it should have been sustained. As appellee's answer was fatally defective and offered no defense to plaintiffs' action, and there being no issue to try, every step taken in the progress of the trial, from the introduction of appellee's testimony down to the verdict, was erroneous.

It is unnecessary, and it would be a waste of time, for us to undertake to review the testimony in this case; but in view of another trial we will say, that there is no evidence contained in the record that tends in the least to show that the premises leased by the appellee, the rents of which are sued for, were rendered untenantable by an unavoidable casualty, and that a new trial ought to have been granted upon the ground that there was no evidence to support the verdict.

The judgment of the County Court is reversed and the cause remanded.

*Reversed and remanded.*

Delivered January 17, 1894.