BRUNSWICK GROCERY CO. *v.* SPENCER *et al.*, receivers.

1. Where a landlord rented a storehouse to a tenant to be used
for the storage of groceries, and a violent and unusual storm
of wind and rain unroofed the building and let in the rain,
which damaged the goods therein, the landlord, in the absence
of a contract to protect the tenant against such extraordi-
nary and unforeseen occurrences, was not liable for damages
thus resulting; nor, for further damages occasioned by a
second rain-storm, unless in the meantime there had been
sufficient time and opportunity to make the needed repairs
upon the roof.
2. The measure of the damages which a tenant is entitled to re-
cover from his landlord for injury to goods caused by the leak-
ing of water through a defective roof, in case the landlord is
liable therefor, is the difference between the market value of
the goods immediately preceding the injury and their market
value immediately thereafter.
3. The action being for the rent of a storehouse, a plea alleging
that the defendant rented the premises "upon the understand-
ing that the storehouse was in a safe and sound condition,
free from all leaks, and suitable for the purposes for which the
defendant desired to use the same; that the plaintiffs knew for
what purpose the same was rented by the defendant, and that
after said storehouse was rented and occupied by the defend-
ant for only a short space of time, owing to the unsound con-
dition of the roof upon said building, the storehouse was
flooded with rain-water and the property of the defendant
. . was injured and damaged [in an amount stated] and be-
came a total loss to the defendant," cannot be supported by
proof that the building was unroofed by a sudden and violent
storm, and that the landlord failed to exercise due diligence in
having the necessary repairs made.
4. Where, although a case was tried upon an entirely erroneous
theory, the evidence, upon the real merits of the case, de-
manded a verdict for the plaintiff, such verdict will not be set
aside because of errors committed by the judge during the
progress of the trial.
5. Although the principal sum sued for in the declaration (as it

appears in the record) was only $900, and the verdict in favor of the plaintiff was for $1,157, yet, as the judge in his charge to the jury stated that the amount claimed in the suit was $1,200 for the rental of a building, and that the defendant admitted owing the sum thus claimed, but relied upon the defense of set-off, inasmuch as no objection was made to the verdict, either in the trial court or in this court, upon the ground that the recovery was in excess of the amount sued for, it will be presumed that the declaration was amended so as to support the verdict, so far as the question of amount is concerned.

February 21, 1896.   Atkinson, J., being disqualified, Judge Callaway, of the Augusta circuit, was designated to preside.

Complaint on account. Before Judge Sweat. Glynn superior court. December term, 1894.

*Atkinson & Dunwody*, for plaintiff in error.
*Goodyear, Kay & Brantley*, contra.

CALLAWAY, Judge.

Spencer and others, as receivers of the East Tennessee, Virginia & Georgia Railroad Company, brought suit against the Brunswick Grocery Company, to recover $900.00, alleged to be due for rent of a brick warehouse in Brunswick, from August 1st, 1893, to May 1st, 1894, at $100.00 per month. The Brunswick Grocery Co. filed its answer, admitting the indebtedness for rent, as claimed, but alleged, "that the plaintiffs ought not to recover, for the reason that the defendant rented the premises from the plaintiffs upon the understanding that the storehouse was in a safe and sound condition, free from all leaks, and suitable for the purposes for which the defendant desired to use the same; that the plaintiffs knew for what purposes the same was rented by the defendant, and that after said storehouse was rented and occupied by the defendant for only a short space of time, owing to the unsound condition of the roof upon said building, the storehouse was flooded with rain-water, and the property of the defendant to the amount of $1,624.70 was injured and damaged, and became a total loss; that the condition of the roof was unknown to the defendant at the time of renting said property, but plaintiffs

at that time knew the same to be unsafe and unsound and not in a tenantable condition, and, although knowing these facts, warranted the same to be safe and sound, and in every way suitable for the purposes for which the same was rented; that, by reason of such representations made upon the part of the plaintiffs, the defendant occupied said building, storing valuable and costly groceries therein, and was damaged in the amount stated above." To this answer was attached a bill of particulars, stating the items damaged, their value, and the amount of damage to each item. This answer was subsequently amended by adding an additional bill of particulars, and increasing the amount of damages claimed from $1,624.70 to $2,364.11, and by adding an item of $43.00 paid by defendant for repairing an elevator in said building. The plaintiffs rested their case upon the defendant's admission of indebtedness for rent. The defendant introduced considerable testimony which showed that a violent and unusual storm passed over Brunswick on Sunday night, August 27th, 1893, which unroofed several buildings in the city, blew down the tower of the Oglethorpe hotel, blew off a large portion of the Mallory Steamship warehouse, blew a tugboat from its mooring, blew the steamer City of Brunswick and a pilot boat up into the marsh, and did considerable damage along the entire South Atlantic coast. The rented building, which was covered with tin, was partly unroofed by this storm, and the rain, pouring through on the night of August 27th, damaged the goods of defendant to an extent estimated at from $150.00 to $200.00. Plaintiffs were notified, on the morning of August 28th, of the condition of the roof, and were requested to repair the same, but failed to do so for some time, and in the meanwhile, on the following Thursday night, a heavy rain fell in Brunswick, and the water poured through the open and unrepaired roof of the building upon defendant's goods, and damaged them to the extent set out in the bill of particulars attached.

This was during the yellow fever epidemic in Brunswick, and all business and railroad schedules were demoralized. There was no tin nor competent tinners in Brunswick, and these had to be carried there by plaintiffs from Macon and Atlanta.

The evidence was somewhat conflicting as to the amount of diligence exercised by the plaintiffs in repairing the roof, but there was no evidence that the roof was in an unsound or unsafe condition at the time of rental or when it was injured by the storm. The $43.00 paid by defendant for repairing the elevator was admitted by plaintiffs to be a just deduction from the rent, and it seems that the original suit for $900.00 rent was converted into a suit for $1,200.00, we presume by amendment, though no such amendment appears in the record. But the judge in his charge stated that it was admitted that $1,200.00 was due for rent, and the verdict for the plaintiffs was for $1,157.00, and it was not excepted to as being in excess of the amount sued for; so that it is a reasonable presumption that the declaration was amended in this respect. The defendant filed a motion for a new trial, upon the statutory grounds, and upon alleged error in numerous extracts from the charge of the court. The motion was overruled, and the defendant excepted upon all the grounds set out in the motion.

In the extracts from the charge excepted to, in the 4th, 5th, 7th, 8th and 13th grounds of the motion for a new trial, the court charged the jury the principles of law substantially as set out in the first head-note, which we think sound in principle and sustained by the decisions of this court in the cases of *Guthman* v. *Castleberry*, 49 *Ga.* 272, and *Whittle* v. *Webster*, 55 *Ga.* 180.

The charge complained of in the 10th ground of the motion for new trial was as follows: "That the true test of damages, if any, sustained by the defendant would be the difference between the market value of the goods before they were damaged and the price they were sold for after-

wards in open market." This charge is not accurate. The amount of damage to injured goods is the amount of depreciation in value caused by the injury, and this is the difference between their market value immediately before the injury and their market value immediately after the injury. Goods may be sold in the market at a price very different from their market value, either higher or lower, and, while the price at which they are sold is a circumstance which may be considered in determining what is their market value, such a price is not necessarily the market value. The correct rule for measuring damages in such cases is that stated in the second head-note.

Under the view which we take of this case, it is not necessary to set out or discuss the other exceptions to the charge. The case made by the defendant in its answer, and the cause which it sought to establish by its testimony, are so entirely different that neither one can support the other. In the pleadings, it alleges as its only source of injury and damage the unsound condition of the roof of the building, which was rented on the understanding and with the warranty that it was safe and sound and free from leaks. There was no testimony whatever that the roof was unsound at the time of renting, or that it failed to come fully up to the alleged warranty. The evidence established the fact that the building was unroofed by a very violent and unusually severe storm. There is not even an intimation that its unsound condition contributed to its unroofing. The evidence further discloses that a very small portion of the damages claimed was caused by the storm which unroofed the building. The defendant cannot recover the damages caused by this storm, because it was not alleged or proved that it had a contract with the plaintiffs to protect it against such an unforeseen and extraordinary occurrence. The greater part of the damage to the goods was caused by a heavy rain four days after the storm, when the rain-water poured through the open places in the injured roof which

had not been repaired, and by wetting the goods damaged them.    The landlords had been notified of the injured and exposed condition of the building on the day after the storm, but had not repaired it when this rain fell.    If they had reasonable opportunity and time to repair it after notice and before the rain which caused the damage and failed to repair it, they would unquestionably have been liable for the consequent damages.    The question of their liability for failure to repair, and whether they had reasonable time and opportunity to make the repairs after notice and before the damaging rain, would have been proper questions to submit to the jury for determination, had such a cause of injury been properly set out or declared upon in the defendant's answer; but no such act of negligence or cause of injury is alleged or even suggested; and the law confines the right to recover to the causes set out in the pleadings. *Central R. R.* v. *Avant*, 80 *Ga.* 195; *Central R. R.* v. *Nash*, 81 *Ga.* 580; *Georgia R. R.* v. *Oaks*, 52 *Ga.* 410. So that, had the proof satisfied the jury that the plaintiffs' negligence in failing to repair caused the damage, which it does not seem to have done, the defendant would not have been entitled to recover, not having set out such a cause of action.

The verdict was demanded by the evidence, and there was no error in refusing a new trial.

*Judgment affirmed.*