The Woodbury Company, Appellant, v. William Tacka-
berry Company.

**Landlord and tenant:** DUTY TO REPAIR. In the absence of an agree-
1 ment in the lease to that effect a landlord is not bound to keep
the premises in tenantable repair.

**Same:** COVENANT TO REPAIR. A covenant to repair ordinarily means
2 to make over, or to restore to its former condition after decay,
waste, injury or partial destruction of the leased premises; it does
not comprehend the removal of mud and water from the basement
of a building, which has accumulated therein from the street during
an unusual flood, but caused no injury to the building or fixtures
except an accumulation of dirt. Such a condition does not cause
a partial destruction of the building.

**Same:** NOTICE: REPAIR BY TENANT. Where a landlord has con-
3 tracted to keep leased premises in tenantable repair he is entitled
to notice from the tenant of needed repairs, even though notice is
not expressly provided by the lease; and it is only after notice, or
knowledge of facts charging him with notice, and a reasonable time
in which to make the repairs that the tenant may make them and
recover from the landlord therefor. In the instant case the landlord
was not notified, nor was he chargeable with notice, and given an
opportunity to remove the mud and water from the leased premises,
even if it was his duty to keep the premises tenantable, so as to
authorize the tenant to recover the expense of the work from him.

**Same:** UNAVOIDABLE CASUALTY. The flooding of the basement of a
4 leased building with mud and water from the street during an
unprecedented storm was an unavoidable casualty, within the terms
of the lease in question, by which the rights of the parties were
fixed in such an event.

*Appeal from Woodbury District Court.*—HON. F. R. GAYNOR,
Judge.

TUESDAY, SEPTEMBER 29, 1914.

ACTION for rent. By way of counterclaim, defendant
prayed for damages in removing water and débris from the
basement of the leased building, and a diminution of rent
because of its partial destruction thereby. These were
allowed, and plaintiff appeals.—*Reversed.*

*Shull, Farnsworth, Sammis & Stilwell,* and *A. M. Alger,*
for appellant.

*M. L. Sears,* for appellee.

LADD, C. J.—The plaintiff leased to defendant its four-
story building and basement for a term of five years and
four months beginning April 1, 1909, and the latter took
possession under the lease. As the monthly rental of $425
for July, 1909, was not paid, this action therefor was com-
menced. There was an unprecedented flood on Saturday,
July 10, 1909, and according to the stipulation of facts dur-
ing the night following—

the basement of the leased premises became filled with water,
mud, and débris, which came in from the street through the
cellar windows of the building, the volume of water due to the
flood being such that the street sewers were inadequate to care
for it, and the drain in said basement inadequate to carry it
off with sufficient rapidity to prevent the flooding of the
basement. Early on Sunday morning, July 11, 1909, the
defendant began the work of pumping out the water from said
basement, without notice to and the knowledge of the plain-
tiff. The work of pumping was completed some time during
that day. While the work of pumping was in progress, defen-
dant requested the plaintiff to furnish hose for use by it in
pumping, and this request the plaintiff complied with. When
that water had been pumped out, defendant proceeded to

remove the mud and débris. The defendant did not at any time request the plaintiff to do any of the work aforesaid. The defendant did not at any time prior to the completion of said work notify the plaintiff that it would hold the plaintiff responsible for the cost of said work. At the time of said flood, the defendant had goods of considerable value stored in said basement, and in order to prevent or lessen damage and injury to them it was necessary to do the work aforesaid as expeditiously as possible. The flood did not work any physical injury to the structure of the building as a whole, or as to any part of it, but the pumping out of the water and removal of the mud and débris brought into the basement by the water rendered the basement unfit for use until such water was pumped out and the mud and débris were removed.

The reasonable value of the services rendered in pumping the water and removing the débris and the materials used was $226.01, and the pro rata rental of the basement in the meantime was $42.50, and these sums defendant asked to be allowed as a counterclaim or offset. This was done, and whether rightly so is the sole question in the case. This necessarily depends on the terms of the lease, which, in so far as material, reads as follows:

All property of any kind that may be on the premises shall be at the sole risk of the lessee, or those claiming through or under it, unless said loss or damage is caused by failure or refusal of the lessor to keep said premises and fixtures in tenantable repair, in which condition said lessor agrees to keep said property. Said lessee, however, shall pay for all small repairs it may make, the cost of which shall not exceed five dollars ($5.00) for each separate item. Said lessor shall not be responsible for any loss or damage on account of any interruption to the lessee's business in the use of said premises by reason of repairs or improvements made to said premises and fixtures, provided said repairs and improvements are made promptly on written notice from the lessee, its sucessors or assigns, and that the lessor, its successor or assigns, or its agents, may, during the said term, at reasonable times, enter to view the said premises, or to show the property and building to persons wishing to lease or buy, and may make repairs and

alterations if it should elect so to do, provided it does not interfere with the business of the lessee.

It is further provided that if said building shall be totally destroyed by fire, or other inevitable casualty, or in case said premises, or any portion thereof, shall be taken for public or private use by the action of any public, judicial, or other competent authority, then said term under said lease shall absolutely determine at the option of said lessee; but in the event of the partial destruction only of said building by fire or other unavoidable casualty this lease shall continue, provided said building can be put in proper and tenantable condition within a reasonable length of time, and in case of such partial destruction, if the respective parties to the lease cannot mutually agree as to what would be a reasonable time to restore said premises and make it ready for occupancy, then such question of time shall be referred to three (3) disinterested persons, one to be chosen by each party to the lease, and they two to choose the third, the decision in writing of any two of whom shall be final and binding on both parties hereto; but should the lessors fail to restore or repair the premises within the time fixed by the arbiters, as aforesaid, if this lease is continued, a just and proportional part of the rent, according to the nature and extent of the injuries to said premises, shall be put in proper shape for use and habitation, such proportion of the rent to be determined in like manner as above provided, if parties hereto cannot agree, but in any event the rent shall be paid up to and including the day of such casualty.

Of course, the lessor was not bound to keep the premises in tenantáble repair but for the provisions of the lease so requiring. *Harris v. Heackman*, 62 Iowa, 411; *Piper v.*

1. LANDLORD AND
TENANT: duty
to repair.

*Fletcher*, 115 Iowa, 263; *Flaherty v. Nieman*, 125 Iowa, 546, 1 Tiffany on Landlord & Tenant, Section 87.   The counterclaim of defendant necessarily rests on the conditions of the lease quoted; one relating to keeping in repair, another to the partial destruction of the building and the third to the diminution of rents in event of loss of the use.

Was the effect of the water and débris in the basement such as to render the premises and fixtures in untenantable

repair? Did these in the basement constitute a partial de-
struction of the property? The lease, when
made was of the premises in their then con-
dition and location, and did not guarantee
them against weather conditions, save as these put them in
some particular out of repair. But the mere presence of
some other substance, such as water or débris, did not affect
the condition of repair in which the premises were kept. To
repair, according to the lexicographers, means to mend, add
to, or make over, restore to a sound condition after decay,
waste, injury, or partial destruction. *Farraher v. City of
Keokuk*, 111 Iowa, 310. In *Lurcott v. Wakely*, 1 K. B. 905,
923, Buckley, L. J., observed that:

2. SAME: cove-
nant to re-
pair.

> Repair and renew are not words expressive of a clear con-
> trast. Repair always involves renewal; renewal of a part;
> of a subordinate part. A skylight leaks; repair is effected
> by hacking out the putties, putting in new ones, and renewing
> the paint. A roof falls out of repair; the necessary work is to
> replace the decayed timbers by sound wood; to substitute
> sound tiles or slates for those which are cracked, broken, or
> missing; to make good the flashings and the like. Part of a
> garden wall tumbles down; repair is effected by building it
> up again with new mortar, and, so far as necessary, new bricks
> or stone. Repair is restoration by renewal or replacement of
> subsidiary parts of a whole. Renewal, as distinguished from
> repair, is reconstruction of the entirety, meaning by the
> entirety not necessarily the whole subject-matter under dis-
> cussion.

See *Martinez v. Thompson*, 80 Tex. 568 (16 S. W. 334);
*Wattles v. South Omaha Ice & Coal Co.*, 50 Neb. 251 (69
N. W. 785, 36 L. R. A. 424, 61 Am. St. Rep. 554); *Pittsburg
& B. Pass. Ry. Co. v. City of Pittsburg*, 80 Pa. 72, 76.

The word is plain, and its meaning unambiguous, and
it should be accorded its ordinary meaning. Now the pres-
ence of the water and débris did not constitute any defect
or lack of repair in the building, and their removal was
not rendered necessary because of any want of repair. In

*Thorndike v. Burrage,* 111 Mass. 531, the tenant undertook to yield possession of the shop and cellar "in good tenantable repair" at the end of the lease, and it was held that leaving on the premises nine horse cart loads of ashes, brickbats, and rubbish, including old tin cans, did not constitute a breach of the condition. Manifestly a promise to repair would not include an obligation to wash the windows, or sweep the floors, or remove from the premises water, snow, or ice, that falls or accumulates in the course of nature, even though these somewhat impair the use of the demised premises, and we are of opinion that the presence of the water and the débris in the basement as a result of an unprecedented storm did not constitute a want of repair as that word is employed in the lease. These did interfere with and obstruct the use, and their removal became necessary to the beneficial enjoyment of the basement, but this cannot in any proper sense be construed as a repair.

And for like reasons we are not persuaded that there was a partial destruction of the building. It continued intact, as did the ground on which it rested. No part even was injured. Had water settled in the basement from causes other than a storm, or even in consequence of an ordinary downpour of rain, no one would have thought of denominating this a partial destruction of the structure. That water and débris reached the basement as a result of an unprecedented storm differs only in degree. Were the premises located in the region of volcanoes, near Mt. Vesuvius for instance, possibly destruction by filling or covering might be assumed to have been contemplated by the parties; but, with nothing in the location of the four-story building and basement suggesting such a possibility, there is no more reason for saying that the presence of water and mud constitutes a partial destruction of the building itself than that débris on the pavement destroys it, or that fall of a tree across destroys a street or alley. The removal of the water and débris in the one case and the débris or tree in the other would not repair

or reconstruct either, but would merely remove an impediment to their beneficial use.

The point was not decided in *Healey v. Tyler*, 150 Iowa, 169. The condition was one against which the lease did not protect the lessee, and in removing the water and débris on its own account, without relying on the lessor, it rightly construed the terms of the lease. The condition was one of those against which neither party had provided, and therefore furnished no ground for recovery.

II. It will be noted that the unprecedented flood occurred Saturday, that during that night the basement filled with water, mud, and débris, and that early the following morning the tenant began clearing the cellar, without first notifying the landlord, and without the latter's knowledge. The landlord had stipulated in the lease "to keep said premises and fixtures in tenantable repair," but nothing was said concerning notice, save that the "lessor shall not be responsible for any loss or damage on account of any interruption to lessee's business in the use of said premises by reason of repairs or improvements made to said premises and fixtures, provided said repairs and improvements are made promptly on written notice from the lessee." The necessity of notice, however, was implied. The lessee ordinarily is in possession and directly interested in having the property, when defective, restored. The lessor is not likely to have knowledge, nor is it his duty to keep himself advised, of the condition of the demised premises, unless he has undertaken so to do. In the absence of knowledge, then, he is not compelled to act, but may rely upon notice from the lessee of any repairs being necessary. "When a landlord expressly covenants to repair, the obligation will be enforced only after he has been duly notified (by the tenant) of the want of repair." 1 Taylor on Landlord & Tenant, Section 330.

To render the lessor liable, it must have been made to appear that notice was given to it of the condition of the

3. SAME: notice: repair by tenant.

basement, or that it knew thereof and neglected to make the necessary repair within a reasonable time, as there was no agreement to repair without notice. *Cummings v. Ayer,* 188 Mass. 292 (74 N. E. 336); *Marley v. Wheelwright,* 172 Mass. 530 (52 N. E. 1066); *Gerzebek v. Lord,* 33 N. J. Law, 240; *Sieber v. Blanc,* 76 Cal. 173 (18 Pac. 260); *Thompson v. Clements,* 96 Md. 196 (53 Atl. 919, 6 L. R. A. 580); *Cooke v. England,* 27 Md. 14 (92 Am. Dec. 618). It is only when the landlord, upon notice or with knowledge of a defect, has failed to repair within a reasonable time, that the tenant may make the necessary repair at the lessor's expense, or, without making them, recover from the lessor an amount representing the consequent diminution of the rental value of the leased property. *Leick v. Tritz,* 94 Iowa, 322; *Ross v. Stockwell,* 19 Ind. App. 86 (49 N. E. 50); 18 Am. & Eng. Ency. of Law (2d Ed.), 232, 233.

These principles are elementary, and, as no notice was given plaintiff, we inquire whether it was charged with knowledge of the necessity for repair. Of course, if plaintiff knew of the defective condition of the basement, there was no occasion to serve it with notice. To have done so under these circumstances would have been an idle ceremony. All exacted is that the landlord know, and this may be shown by proof of having imparted notice, or of such facts and circumstances that, acting as an ordinarily diligent person, it must have been aware of the defect complained of. *Guthman v. Castleberry,* 49 Ga. 272; *White v. Montgomery,* 58 Ga. 204; *Frank v. Conradi,* 50 N. J. Law, 23 (11 Atl. 480); *Hayden v. Bradley,* 6 Gray (Mass.), 425 (66 Am. Dec. 421). Even then a reasonable opportunity must be afforded the landlord to make the repair, in order to constitute a breach of the covenant to repair and authorize the tenant to do so at his cost. *Whittle v. Webster,* 55 Ga. 180; *Brunswick Grocery Co. v. Spencer,* 97 Ga. 764 (25 S. E. 764); *Lewis v. Chisholm,* 68 Ga. 40; 1 Taylor on Landlord & Tenant, section 330; 18 Am. & Eng. Ency. of Law, 230.

Reverting to the stipulation of facts, it will be noted

that the only information imparted to plaintiff was in borrowing hose to pump out the water. At that time, defendant was actually engaged in pumping out the water. This had been begun early in the morning, immediately after the filling of the basement, and without affording the plaintiff any opportunity to remove it. In so doing, and in borrowing the hose to enable it to continue the work of pumping, without any suggestion to plaintiff of any obligation to remove the same, the latter had the clear right to assume that nothing was required of it in the way of repairs, and that defendant was cleaning out the basement on its own account. Certainly the lessor was not bound to interrupt the pumping, and insist that it be allowed to do what the lessee had voluntarily undertaken. It might well assume that the lessee had elected to clean the basement not owing to any breach of contract or duty on the part of the landlord, but in order to protect its own property stored therein.

The record discloses that at no time might the plaintiff have removed the water and débris from the basement without interfering with the work of the tenant actually in progress in so doing, and for this reason there is no escape from the conclusion that plaintiff was never afforded the opportunity to repair, if it were such, even though knowledge of the necessity of repair be conceded. The theory that there was a breach of the covenant because of failure to repair evidently was an afterthought, and, as no opportunity to repair was afforded the lessor, he did not become liable for the expenses incurred therein by the lessee.

III. It cannot well be questioned but that the condition of the basement was the result of unavoidable casualty. See

4. SAME: unavoidable casualty.

*Tays v. Ecker*, 6 Tex. Civ. App. 188 (24 S. W. 954); *Phillips v. Sun Dyeing, Bleaching & Calendering Co.*, 10 R. I. 458; *Welles v. Castles*, 3 Gray (69 Mass.), 323.—*Reversed.*

All the Justices concur, except GAYNOR, J., who took no part.