ROBERT SHATTO, Appellee, v. FRANK GRABIN, Appellant.

No. 46039.

NOVEMBER 17, 1942.

REHEARING DENIED MARCH 19, 1943.

Messer, Hamilton & Cahill, of Iowa City, for appellant.

Ingalls Swisher and D. C. Nolan, both of Iowa City, for appellee.

OLIVER, J.— Appellee, Robert Shatto, a farm laborer, 31 years of age, was ordered by his employer, Mr. Quinlan, to assist in stacking hay upon a farm owned and operated by Roy Willey. Jerry Donda and appellant, Frank Grabin, a neighboring farmer, also assisted Willey in the work. The hay was

placed upon the stack by an overshot haystacker owned by Mr. Willey. This stacker elevated the hay in a cradle, attached to the end of a frame, which was hoisted and lowered by means of a rope or cable running through blocks and pulleys.

Appellant operated a horse-drawn sweep rake, which gathered the hay from the field and pushed it upon the cradle as the cradle lay flat upon the ground. The stacker was operated by a team fastened to one end of the cable and driven by Mr. Willey. As the horses walked forward, pulling out the cable, the end of the frame and the cradle, holding 600 or 700 pounds of hay, were slowly raised from a horizontal position on the ground to a vertical position at the side of the stack, and the hay in the cradle was automatically dumped upon the top of the stack. Then the frame and empty cradle were slowly lowered to the ground by the force of gravity which tended to keep the cable taut as the team was walked backward. A load from the stacker was dumped upon the stack every four or five minutes. Donda and appellee worked upon the top of the stack straightening the hay. When completed the stack was 20 feet high.

The cradle was standing about 2½ feet from the stack and happened to be lodged on dead center. Donda and appellee crawled from the stack upon the cradle to be lowered to the ground. Thereupon appellant told Willey to back up the horses and said he (appellant) was going to give them a thrill. We quote from the cross-examination of appellant himself:

"Q. You told Mr. Willeys to back up the team and give some slack in the rope you were going to give them a thrill? A. Something like that."

Donda testified he exclaimed, "For God's sake don't do it." Appellee said, "Don't do it somebody will get hurt." Willey backed the team attached to the rope. The frame and cradle remained standing upright on dead center. With a grin upon his face, appellant walked over to the stacker and jerked or pulled the rope, thus moving the frame and cradle from dead center. The frame and cradle dropped and fell to the ground, severely injuring appellee. Apparently, the part of the stacker which gave way was a log chain with which Willey had

earlier in the day replaced a broken clevis which held one of the pulleys to the frame. Immediately after the accident appellant said, "I suppose it was my fault, I said to give them slack, give them a thrill."

The petition did not charge appellant with willful or wanton misconduct. The case was brought upon the theory that he was guilty of negligence. It was tried upon that theory and will be so considered upon appeal.

I. Appellant assigns as error the overruling of his motion for directed verdict, based upon the asserted insufficiency of the evidence to show that his conduct was the proximate cause of appellee's injury, that such conduct was negligent, and that appellee was free from contributory negligence. In considering said ruling the evidence will be viewed in the light most favorable to appellee.

Appellant sought to play a practical joke upon appellee and Donda by causing the cradle with the two men upon it to fall part of the distance to the ground. To accomplish this he did two things. First, he caused Willey to back his team and thus slacken the cable by which cradle and frame were to be lowered. The stacker happened to be lodged in a vertical position on dead center. In that position its weight rested upon the machine itself and was not supported by the cable. Therefore, when the team was backed there was no corresponding downward movement of the frame and cradle, which would have kept the cable taut. Then appellant pulled the frame and cradle off dead center. This left them free to fall unchecked until the loose cable was taken up. Appellant apparently expected the fall would suddenly stop when the cable was jerked taut. There is evidence that the men on the cradle felt a jerk when it had dropped about 10 or 15 feet. Obviously, in falling even a relatively short distance, the frame and cradle, carrying the two men, would develop considerable momentum, the impact of which upon the cable would subject various parts of the stacker to extraordinary shock and strain.

Immediately prior to the time the stacker crashed upon the ground, it had been used to elevate loads of approximately twice the weight of the two men and was apparently in good

working order. The circumstances shown in evidence were sufficient to justify a finding that the forces put in play by appellant subjected parts of the stacker to extraordinary strain and shock, which caused it to break and fall to the ground. Therefore, the question of proximate cause was for the jury.

So, also, was the question of appellant's negligence. It was his duty to exercise such reasonable care to avoid injuring appellee as an ordinarily prudent person would exercise under like circumstances. This standard of care requires one to refrain from conduct reasonably likely to cause injury to others. Measured by the foregoing test, it cannot be said, as a matter of law, that appellant's conduct constituted reasonable care. Hence, it was proper to submit that question to the jury.

It is also clear that appellee was not guilty of contributory negligence, as a matter of law, in attempting to ride the cradle down. There was no ladder or other means of descent except by crawling down the stacker. This was the only stack upon which appellee had worked with this stacker. However, Donda, who was an experienced stacker, and some others, had frequently and safely mounted and descended from other haystacks by riding upon this cradle. Whether appellee was guilty of contributory negligence in so doing is a proposition upon which reasonable minds might differ. Hence, it was a question for the determination of the jury.

II. The petition alleges appellant was negligent (1) in causing Willey to back the team and slacken the cable (2) in pulling the cradle off dead center and starting it to descend with the cable slackened (3) in causing the cradle to drop suddenly from an elevated position with appellee and Donda thereon, and failing to exercise reasonable care for the protection and safety of appellee and Donda when he knew they were in a position of peril. Appellant predicates error upon the submission to the jury of each of said three specifications of negligence. His principal complaint is that there was no proof to support the same. We have already determined this contention adversely to appellant in the preceding division.

III. Instruction 8 states that the first ground of negligence (heretofore set out in substance), if proven, would not in and of itself be such negligence as to make appellant

liable to appellee and must be considered only in connection with the other grounds of negligence and the other alleged acts of appellant, and that, if the jury finds the act of appellant in causing the rope to be slackened contributed to and was a factor in the result that followed, then such act may be considered in determining whether appellant was negligent as defined in the instructions. It is contended the instruction is contradictory, misleading, and confusing. This criticism is not well founded. The instruction in so many words states that this ground of negligence, if proven, may be considered only in connection with the other grounds of negligence. Furthermore, the instruction might well have permitted liability to be predicated upon a finding on this ground of negligence alone. Appellant may not complain that an instruction is more favorable to him than he was entitled to receive.

IV. Appellant predicates error upon the refusal of the court to instruct the jury upon the defense of assumption of risk pleaded by him. In this connection it may be noted that an instruction given by the court defining contributory negligence states it "may consist in his voluntarily exposing himself to danger, or, in his failure to avoid danger when the danger was known to him, or, when by the exercise of reasonable care and prudence on his part he could have discovered the danger in time to have avoided it." This was the substance of the thought expressed in the requested instruction.

Edwards v. Kirk, 227 Iowa 684, 288 N. W. 875, involves the doctrine of assumption of risk. As therein noted, except in cases arising out of some contractual relation such as master and servant and in certain cases where, by reason of the character of the defendant's act, contributory negligence does not bar recovery, the principle of assumption of risk operates in a rather strictly limited field.

The suit at bar was based not upon any alleged defect in the stacker but upon alleged negligent conduct of appellant in attempting to frighten appellee. Assuming, without deciding, that appellee may have assumed the risk of injury incident to the stacker itself and its proper operation, he did not assume the separate and distinct risk of appellant's negligence in attempt-

ing to give him "a thrill." Carver v. Minneapolis & St. Louis Ry. Co., 120 Iowa 346, 94 N. W. 862; McGovern v. Inter Urban Ry. Co., 136 Iowa 13, 111 N. W. 412, 13 L. R. A., N. S., 476, 125 Am. St. Rep. 215. Moreover, such negligence was not obvious prior to the time appellant proceeded to execute his plan. Appellee could not "choose" to expose himself to the danger from negligence of another which was not to be anticipated. In the language of Edwards v. Kirk, supra, at page 692 of 227 Iowa, page 879 of 288 N. W.:

"There was no time for deliberation; no opportunity to choose. * * * He was suddenly caught in a trap not of his own choosing, * * * ."

The refusal to instruct upon assumption of risk was proper. The proposition involved was contributory negligence. 38 Am. Jur. 847; Edwards v. Kirk, supra.

V. Appellee suffered a comminuted fracture of the right thighbone just above the knee joint, from the effects of which his leg will be permanently stiffened. He also suffered injury to his left wrist which caused a disease of the bone. He was hospitalized for two months, in bed at home three weeks, and on crutches for four months. He had not been able to do ordinary farm work at the time of the trial, more than a year after he was injured. His doctor and hospital bills amounted to $571, and future operations on the leg and wrist may require $400 additional expense. His injuries were painful. The verdict was for $5,000. We hold it was not excessive.

VI. While in the hospital appellee developed phlebitis. His attending physician testified he concluded this was a complication associated with his injuries and connected with his hospitalization. A doctor who later attended him was asked, from his examination and treatment of the patient, what, in his opinion, was the reasonable cause of this phlebitic condition. Over appellant's objection the court permitted him to answer:

"A. I would say in all likelihood that the thrombophlebitis or milkleg was due to the recumbency the patient had to go through following this operative procedure and the treatment of the fracture of the right leg."

The particular ground upon which appellant assails this ruling is that the question called upon the witness to determine an ultimate question of fact and so invaded the province of the jury. It is asserted the question sought the doctor's opinion of the "cause" of the condition instead of the "probable cause" or what might reasonably have been the producing cause. These assertions overlook the language in the question, "reasonable cause," and in the answer, "in all likelihood." However, both question and answer might properly have been limited to the doctor's opinion of the "cause." This point appears to have been definitely settled in Grismore v. Consolidated Products Co., 232 Iowa 328, 361, 5 N. W. 2d 646, 663, in which, after a thorough consideration and discussion of numerous authorities, this court said:

" * * * if the matter before the tribunal for determination is one in which opinion testimony, either lay or expert, is necessary or proper, the witness may express his opinion either as to the possibility, probability, or actuality of the matter of fact about which he is interrogated, and the answer will not be an invasion or usurpation of the province or function of the jury, even though it passes upon an ultimate fact which the jury must determine."

Appellant makes many complaints concerning other instructions. After careful consideration, we conclude they are without substantial merit. The instructions, considered as a whole, were adequate, clear, and fair. We have also considered the different assignments of error based upon the refusal to give various instructions requested by appellant. The instructions given by the court fairly covered the propositions suggested in the various requested instructions insofar as said requested instructions correctly stated the law applicable to the case.

Nor do we find reversible error in certain rulings upon evidence assailed by appellant.—Affirmed.

WENNERSTRUM, C. J., and GARFIELD, SAGER, BLISS, MITCHELL, HALE, and MILLER, JJ., concur.