*Reversed and remanded.*

---

HUMISTON, KEELING & CO.

*v.*

CHARLES G. WHEELER.

*Opinion filed October 24, 1898.*

1. WAIVER—*putting in evidence after denial of motion to instruct for defendant is a waiver.* A defendant who puts in his evidence after the denial of his motion to direct a verdict, and who fails to renew the motion or ask for a peremptory instruction at the close of all the evidence, waives his right to assign the denial as error.

2. LANDLORD AND TENANT—*what necessary to constitute an eviction.* In order to constitute an eviction the tenant must abandon the premises on account of some act of the landlord, and the latter's entry after abandonment by the tenant is not an eviction.

3. SAME—*landlord's entry after abandonment does not relieve tenant from paying rent.* Upon abandonment of leased premises by the tenant without the landlord's fault, the latter may re-enter and re-rent the premises, crediting the former tenant with the proceeds, and his so taking possession does not relieve the tenant from liability for the stipulated rent.

4. SAME—*destruction of leased premises by fire—liability of lessee for rent.* A lessee of the land and building is not excused from his covenant to pay rent by the loss of the premises by fire, if anything remains to which the lease may attach.

5. SAME—*there is no implied warranty that leased premises will remain tenantable.* There is no implied warranty by the lessor that the premises will remain tenantable until the end of the term, and if they are rendered untenantable, but not destroyed, the tenant is not relieved from his covenant to pay rent, but may repair the premises and enjoy them until the end of the term.

6. LEASES—*when lease of building will carry the land.* A lease of a building described as being certain numbers on a certain street

carries the land as well as the building, although certain portions of the building are reserved to the use of the lessor.

7. Same—*what not a total destruction of building.* The burning of the roof and portions of the upper floors of a five-story building, leaving the walls, first floor and basement intact, is not such a total destruction as relieves the lessee of the building from his covenant to pay rent.

8. Evidence—*evidence that tenant leased other premises after fire is admissible to show abandonment.* In an action by a lessor to recover rent for premises rendered untenantable by fire, evidence that the lessee, after the fire, leased other premises is admissible, as showing that the lessee did not intend to return to his former quarters, which the lessor repaired and re-rented.

*Humiston, Keeling & Co.* v. *Wheeler,* 70 Ill. App. 349, affirmed.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. Jonas Hutchinson, Judge, presiding.

Flower, Smith & Musgrave, for appellant.

Sigmund Zeisler, for appellee.

Mr. Justice Cartwright delivered the opinion of the court:

Appellee obtained a judgment in the superior court of Cook county against appellant for $3750, the balance due, by the terms of a lease, for the rent of certain premises in Chicago from March 13, 1891, to May 1, 1892, after crediting $2400 received by appellee from other tenants, to whom he rented the premises during a portion of said period after their abandonment by appellant. The judgment has been affirmed by the Appellate Court.

The arguments in this court are devoted largely to questions of fact, such as whether the premises rented were totally destroyed by a fire on March 13, 1891, and whether there was a surrender of the lease and an acceptance by the plaintiff as landlord, and whether the taking possession by the plaintiff constituted an eviction. These questions were involved in the trial court and Ap-

pellate Court, but have now been conclusively settled in favor of plaintiff by the judgment of the Appellate Court.

At the conclusion of the evidence for the plaintiff the defendant moved the court to instruct the jury to find the issues for defendant, and the motion was denied, but defendant then proceeded to offer evidence in its behalf, and the motion was not renewed or an instruction asked at the close of all the evidence. The motion was therefore waived. (*Joliet, Aurora and Northern Railway Co.* v. *Velie,* 140 Ill. 59; *Louisville, New Albany and Chicago Railway Co.* v. *Red,* 154 id. 95.) The question of the sufficiency of the evidence to sustain a verdict was not raised as a question of law, and we are precluded from considering questions of fact, as such. We must confine ourselves to such assignments of error as we are authorized to pass upon, and can only consider the evidence or facts proved in their relation to such assignments.

Only one ruling of the court during the trial is pointed out and complained of in the argument. This alleged error was in permitting plaintiff to prove that after the fire which occurred in the premises the defendant rented other quarters and made a lease for the same. As already said, it is argued here that there was an eviction by the plaintiff, and both parties agree that that question was in issue before the jury. Upon that issue it was an important question whether the tenant had abandoned the premises before the expiration of its term and before the entry by the plaintiff. In order to constitute an eviction the tenant must abandon the premises on account of the act of the landlord, and if defendant had already abandoned them, the entry by plaintiff would not constitute an eviction. In case of an abandonment without fault of the landlord or as the result of his acts, he may re-enter and again rent the premises and credit the lessee with the proceeds, and his so taking possession does not relieve from the payment of rent. (12 Am. & Eng. Ency. of Law, 751; Wood on Landlord and Tenant, sec. 477.)

The evidence was that plaintiff rented to defendant Nos. 143 and 145 Lake street, in Chicago, from May 1, 1890, to May 1, 1892, with the exception of office room on the second floor, the fourth story and stairs connecting with the front east door, and a space in the rear of the basement, ten by twenty feet, for grinding purposes, which were retained by plaintiff. Plaintiff was also to have the right to grind drugs by the use of the gas-engine, and was to pay one-fifth of the cost of running it. If water gave out in the fourth story he was to be allowed to pump sufficient water by the use of the engine, and both parties were to have common use of the elevator. Defendant agreed to pay $4800 a year as rent, in monthly installments of $400, one-half in cash and the other half in drugs. At the expiration of the lease the premises rented were to be returned to plaintiff in as good condition as when entered upon, loss by fire or unavoidable accident or ordinary wear excepted. On the leased premises there was a building of five stories and a basement, with a frontage of thirty feet and running back from the street one hundred and sixty-five feet, out of which the portions stated were excepted. Defendant occupied the premises from May 1, 1890, until March 13, 1891, when most of the interior of the building was burned out. The walls remained intact. The roof and fifth story were destroyed. Some of the flooring at the front and rear of the fourth floor remained. The third had a few feet more at the back end and twelve or thirteen feet at the front end, on which goods, desks and shelves were left. Of the second floor about twenty-five feet remained in the rear and about forty-five or fifty feet at the front end. The first floor was not burned, but was covered by *debris* from the floors above which had fallen upon it, and the basement was not burned. The building was rendered unfit for occupancy by this condition and defendant left it. Before the evidence objected to was offered, plaintiff had testified, without objection, that shortly after the fire he informed

one of defendant's officers that he had let the contract
for repairing the store and expected them to occupy it or
find a tenant, and they said they had taken a new store,
and that when he called on defendant at its new store
the last of March to collect rent for that month, they·
paid him for thirteen days only, and tendered him a re-
ceipt for the same in full of all rents.    A letter from de-
fendant to plaintiff, dated June 8, was also in evidence,
in which it was stated that defendant was not, and had
not been, a tenant of plaintiff since the morning of March
14.    The fact which the evidence objected to tended to
prove had already been proved without objection and was
not in controversy, so that defendant could not have been
harmed by the ruling; but the evidence was proper on
the question of abandonment, to show that defendant did
not intend to return to the premises.

The only instruction complained of is the first given
at the request of plaintiff.    It is as follows:

"The court instructs you, as a matter of law, that
where a lease is made of a portion of a building, and such
portion is damaged by fire, and the premises rented are
rendered untenantable, but the premises are not totally
destroyed but are capable of repair, those facts will not
relieve the tenant from his liability to pay rent, unless
the lease so provides.    And if you believe, from the evi-
dence in this case, that the premises leased by the plaintiff
to the defendant in this case were rendered untenantable
by fire, but were not totally destroyed and were capable
of repair, then that fact did not relieve the tenant from
its liability to pay rent, as provided by the lease."

It is alleged against this instruction that it was too
broad, but we find no fault in it.    The lease was of the
premises 143 and 145 Lake street, and the description in
a lease or conveyance would unquestionably carry the
land as well as the building. (Sheppard's Touchstone, 90.)
It is contended that on account of the exceptions from
the general description the lease is to be regarded as a

lease merely of portions of the building.   The lease was not of certain portions of the building without the land, but of the land and building, except certain minor portions of the building.   The legal rights of the parties would, of course, be the same if plaintiff had leased the excepted portions to another person instead of retaining them, and it certainly could not be said that if he had leased the fourth floor and office and space for grinding to some third person, that such person would have acquired any interest in the land except such as was necessary to the enjoyment of the particular rooms.   If the plaintiff had then leased the premises, except such interest, to defendant, the lease would surely convey an estate in the land which the tenant of particular rooms had not acquired.   The rule is, that when land and building are rented the tenant is not excused from the covenant to pay rent by the loss of the premises by fire, if anything remains to which the lease may attach.   There is no implied warranty of the landlord that the premises shall remain tenantable to the end of the term, and if they are injured or rendered untenantable, but not destroyed, the tenant is not relieved from his covenant, but may repair the damage and restore them to their former condition and enjoy them to the end of the term.   (3 Kent's Com. 465; *Heck* v. *Ledwidge*, 25 Ill. 109; *Smith* v. *McLean*, 123 id. 210; 12 Am. & Eng. Ency. of Law, 741.)   Many authorities have recognized an exception to the common law rule that the destruction of the leased premises does not release the tenant from his covenant to pay rent.   This exception has been made where the destruction was total, so that there was nothing upon which the lease could operate, and its ground is, that the destruction of the entire subject matter of the contract extinguishes the estate for years, and, the interest of the lessee being entirely destroyed, the agreement to pay rent is extinguished.   This is the case where a room or apartments or a building is leased and destroyed.   The exception requires that the

building, or portions of the building, leased shall be not merely damaged or injured, but destroyed. (*Smith* v. *Mc-Lean, supra.*) Total destruction, perhaps, does not mean such a destruction as does not leave one stone lying upon another, but it must be such as destroys the leased property in its character as a room or a building. The question, under the exception, is as to the condition to which the thing leased has been reduced by the fire, and here the walls and basement were intact. The building, as a building, was not destroyed, but required a new roof and new floors above the first floor. It was in a condition that defendant might have made repairs and occupied it, and the new roof and floors would properly have been termed repairs, and not the creation of a new building. If the defendant had a right to do that and to continue to occupy the premises to the end of the term, it would not be relieved, under any rule, from the payment of rent. There is no question here that if the lease was of the land and building, as we conclude it was, there remained something to which the lease attached even if the building was destroyed, but this instruction was applicable to the claim of defendant that the lease was only of the portions of the building which it had a right to occupy. The evidence showed that there was not an entire destruction, even of the building, and stated the correct rule as applied to that condition.

The only other error assigned which we have a right to consider is, that counsel for plaintiff made an unwarranted statement to the jury touching the relative wealth of the parties. The language purported to be in reply to a statement of defendant's counsel that plaintiff was a rich landlord; but whether it was proper or not, no ruling of the court was asked or obtained, and under repeated decisions of this court there is nothing to be reviewed under that assignment.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*