RICHARD F. WRIGHT, appellee, v. CLARENCE R. PETERSON, appellant.

No. 52196.

NOVEMBER 15, 1966.

REHEARING DENIED JANUARY 9, 1967.

Dale L. Spencer, of Des Moines, for appellant.

R. L. Morgan and Robert A. Wright, both of Des Moines, for appellee.

SNELL, J.—This is an action at law brought by a tenant against his landlord for injuries sustained as a result of an explosion of gas in the basement of a home rented by the tenant.

The jury returned a verdict for plaintiff and from the judgment thereon and all rulings inhering therein defendant has appealed.

Defendant is the owner of a rental six-room residence located on a city size lot in Polk City.

On May 24, 1962, plaintiff and his wife by oral agreement rented the premises and with their children moved in the next day. There is no claim of any agreement by the landlord to repair. The house had been newly decorated. The house was equipped with a gas furnace and gas water heater located in the basement and fueled with LP (bottle) gas. Under the rental agreement the tenants were to pay for their own fuel.

There was direct testimony by a former tenant from which the jury could find that the landlord (defendant) knew that the water heater had caused trouble and a gas explosion resulting in personal injury to a previous tenant. Defendant told plaintiff nothing about previous trouble.

After moving in plaintiff contacted Mr. Glen Stanley, who was in LP gas business, to fill the gas tank and turn on the utilities. Mr. Stanley testified:

"When the Wrights moved in the company driver filled the tank and I hooked up the stove, furnace and water heater. There was no plumbing to do, it was a matter of turning them on. I turned on the gas at the tank and I went to the basement and the gas was going through the hot water heater, and when I shut it off it stopped, so I lit the furnace. Mr. Wright said he had to have hot water so I finally lit the heater for him and told him to get ahold of Mr. Peterson, that it was absolutely unsafe. I could hear the gas escaping when I first went down into the basement. I checked the hot-water valve and the gas was going through the valve rather than out. I didn't want to mess with the heater. It shut on and off all right unless the pilot was out and the thermocouple was cool, then, it absolutely wouldn't shut off. When the pilot light was out the gas came on through and it would leak into the combustion chamber and the basement. * * *

"I went ahead and lit it and told him if he was going to use it he ought to shut it down—let it run awhile, then shut it off, but it absolutely wasn't too safe. * * *

"Q. * * * What did you tell Mr. Wright about the condition of this particular gas water heater? A. I told him he had better get ahold of Mr. Peterson and get a new control on it; that it wasn't very safe that way; that it was dangerous, might blow him and his wife and family all over Polk City.

"Q. You told him that it was dangerous? A. Yes, sir.

"Q. Did you tell him that there was a danger of an explosion? A. Yes, sir.

"Q. At anytime while you were out there did you suggest that it not be lit and turned on? A. Before I ever lit it I told him he ought to—it should be fixed, but he said he had to have hot water, so we lit it then. * * *."

Although their recollections of this conversation varied somewhat from Mr. Stanley's testimony both plaintiff and his wife admitted hearing Mr. Stanley's warning that the heater was dangerous. From Mr. Stanley's testimony it would appear that there would be trouble only when the pilot light was out. Mrs. Wright testified:

"I heard what was said and Glen Stanley told my husband

that the heater was dangerous and that it had flared up or blown up before. That the pilot light had a habit of going out. He told us to keep it turned down low. He told us to watch it and call Mr. Peterson because it was potentially dangerous. We tried to call Mr. Peterson but we couldn't get ahold of him. Mr. Stanley lighted the heater at that time."

Mr. Wright testified that Mr. Stanley "lit the hot water tank and told me to get in touch with Mr. Peterson because the hot water tank was defective. * * * We did not light it the week that we were there."

Mrs. Wright testified concerning the explosion:

"We moved into the property on May 25, 1962, a Friday. The gas was hooked up the next morning, on Saturday. The explosion occurred on May 31, 1962, a Thursday. We had not been home from before 7:30 a.m. until 2:30 or 3:00 in the middle of the afternoon on that day. We had been in Ottumwa the day before on Decoration Day and had been at the hospital with our daughter most of the week before that Thursday. * * *

"On the day of the explosion we came home late in the afternoon and when I went to wash my dishes the water was warm at first and then it turned cold. I told my husband that there wasn't any hot water and he said he would go and look at the heater and he said if the tank is out I'll go get Glen Stanley to light it. He went out the door that opens off the living room and onto the porch and raised the trapdoor to the basement and then there was a loud boom and the house filled with black smoke. My family and children were in the house at the time. I went to the back porch and the smoke was there too and the windows were all blown out and my husband was on the basement floor spread-eagled out on his stomach. His face was all red and dark and his hair and eyebrows were singed and he told me not to touch him. His arms were dark colored and was peeling. There was no flame."

Mr. Wright's testimony as to what happened was substantially the same.

Plaintiff was severely injured and his personal property in the house was damaged.

Plaintiff was 39 years old when injured in May 1962. This case was tried in March 1965.

For the problems before us further review of the evidence is unnecessary.

■ I. There is no claim by plaintiff that the landlord retained control of the premises or any part thereof or agreed to repair. Under such circumstances it is the general rule and the rule in Iowa that the landlord is not liable for injuries to the tenant occurring on the premises. Casey v. Valley Savings Bank, 231 Iowa 19, 24, 300 N.W. 733; Stupka v. Scheidel, 244 Iowa 442, 447, 56 N.W.2d 874; 32 Am. Jur., Landlord and Tenant, section 662; 52 C. J. S., Landlord and Tenant, section 417.

"This general rule, however, is subject to an exception in regard to hidden or latent defects which existed at the time the lease was consummated and where the defect was known to the lessor (or through the exercise of reasonable care the lessor should have known of it) and he actively concealed it from the tenant or failed to call it to his attention." 10 Drake Law Review 132; 52 C. J. S., Landlord and Tenant, section 417.

■ Defendant-appellant concedes in his argument that there is such an exception to the general rule but contends that plaintiff neither pleaded nor proved such a defect. Plaintiff's petition included among the specifications of alleged negligence the failure to inform the plaintiff of the defective condition of the water heater after discovery of the defect. There was testimony from which the jury could find knowledge of the defect and failure to disclose on the part of defendant. Relative thereto the court instructed the jury:

"You are instructed that it is the law of this state that a landlord is not required to repair the property under lease in the absence of an express agreement to make such repairs, and the landlord is not liable for damage from defects in property, except where at the time the lease was entered into there was a defect known to the landlord and he concealed it from the tenant or failed to call it to his attention.

"As applied to this case, you are instructed that there was no duty on the part of defendant Peterson to repair the premises

after Wright took possession, since there was no express agreement to do so, and he would not be liable for damages to plaintiff Wright unless you further find from all the evidence that the gas water heater in question was defective on the date the oral lease agreement was made, and that said defective condition was on that date known to defendant Peterson by previous notification and he, Peterson, failed to call it to the attention of plaintiff Wright, or concealed it from him, *and under such finding your verdict would be for the plaintiff*. Further, if you find from all the evidence that defendant Peterson had no knowledge nor had been notified of the defective gas hot water heater, then your verdict would be for the defendant." (Emphasis added.)

The words "under such finding your verdict would be for the plaintiff" were improper in this instruction. Such a finding would support plaintiff on the first proposition he was required to establish but standing alone would not entitle plaintiff to a verdict. An instruction immediately preceding listed four propositions on which plaintiff had the burden of proof. They were the usual instructions and listed (1) proof of negligence as alleged; (2) proximate cause; (3) freedom from contributory negligence, and (4) damage and the amount thereof. The instruction concluded as follows:

"If the plaintiff has established each of the foregoing propositions by a preponderance of the evidence, then you will return a verdict in plaintiff's favor.

"But if the plaintiff has failed to establish by a preponderance of the evidence one or more of the foregoing propositions, then your verdict will be for the defendant."

When the instructions are viewed as a whole it appears that the error noted was an oversight. The particular words were not objected to but we cannot approve contradictory or confusing phraseology.

Except as noted the issue of breach of duty by defendant was properly submitted to the jury.

II. Appellant argues that plaintiff was contributorially negligent as a matter of law. We do not agree. Generally, questions of negligence, contributory negligence, and proximate cause

are for the jury; it is only in exceptional cases that they may be decided as matters of law. Citations are unnecessary. See rule 344(f) (10), Rules of Civil Procedure.

In a previous instruction contributory negligence had been properly defined. The first part of Instruction No. 7 properly told the jury that plaintiff must establish by a preponderance of the evidence "that he was free from any negligence which in any manner or degree contributed directly to the accident and damages, if any, sustained by him." The instruction then continued:

"As applied to this case, if you find from all of the evidence that the plaintiff had knowledge of a defective and dangerous condition of the gas heater before his injuries and failed to use ordinary care under all of the circumstances, *he would be guilty of negligence, and cannot recover herein,* and your verdict should be for the defendant. Further, if you find from all of the evidence herein that the plaintiff had the said Stanley light said heater and continued using the same, under all the circumstances shown by the evidence, and used the care of an ordinarily prudent person, then you are directed to return your verdict in accordance with all other instructions herein." (Emphasis added.)

The instruction that if he was negligent he could not recover was improper. Negligence alone would not bar recovery.

It is doubtful if this contradiction had any effect on the jury's deliberations but such possible confusion should be avoided.

Except as noted the issue was properly submitted to the jury. Tucker v. Tolerton & Warfield Co., 249 Iowa 405, 409, 86 N.W.2d 822.

III. Defendant by amendment to his answer affirmatively pleaded assumption of risk. There was evidence sufficient to require the submission of the issue. Defendant requested and the court refused to give an instruction on assumption of risk. Under the circumstances the court should have given a proper instruction thereon.

Assumption of risk is an affirmative defense defendant had the burden to prove. It does not apply unless plaintiff

had actual knowledge of the danger involved. Stupka v. Scheidel, supra, loc. cit. 451 of 244 Iowa.

The court submitted to the jury a special interrogatory as follows: "Do you, the jury, find that the plaintiff had knowledge of the defective condition of the gas hot water heater, prior to its explosion?" The jury answered "yes."

■ There was evidence from which it could be found that plaintiff assumed the risk incident to use of the water heater. It does not follow that as a matter of law he assumed the risk of injury by opening the basement door. The question is, did he as a reasonably prudent man have a right to believe, and did believe, that he could enter the basement in safety by exercising proper care. Dillehay v. Minor, 188 Iowa 37, 42, 175 N.W. 838, 11 A. L. R. 106.

In Marean v. Petersen, 259 Iowa 557, 144 N.W.2d 906, we discussed assumption of risk at length. We need not repeat here. In that case we were considering situations arising from the use of an automobile. For the most part the doctrine has been recognized in cases brought under our gratuitous guest statute and those involving a master-servant or principal-agent relationship. However, we have not held the doctrine limited to such cases. The doctrine was clearly available to defendant as a defense in the case at bar.

Assumption of risk is discussed at length in Restatement of the Law, Torts 2d, chapter 17A, section 496A et seq. We quote a few excerpts therefrom:

"A plaintiff who voluntarily assumes a risk of harm arising from the negligent or reckless conduct of the defendant cannot recover for such harm." Section 496A.

"* * * a plaintiff who fully understands a risk of harm to himself or his things caused by the defendant's conduct or by the condition of the defendant's land or chattels, and who nevertheless voluntarily chooses to enter or remain, or to permit his things to enter or remain within the area of that risk, under circumstances that manifest his willingness to accept it, is not entitled to recover for harm within that risk." Section 496C.

"In the third type of situation, the defendant has already

violated his duty to the plaintiff, by creating a dangerous condition or situation, which continues after the defendant's conduct has terminated. If the plaintiff is injured before he discovers the danger, the defendant will be liable to him. When, however, the plaintiff discovers the danger, and voluntarily proceeds in the face of it, he is barred from recovery by his assumption of the risk." Section 496C, comment f.

"In all three situations, the plaintiff's conduct may be entirely reasonable under the circumstances; or it may be unreasonable, and so subject him also to the defense of contributory negligence." Section 496C, comment g.

In the case at bar there was a question of fact as to what if any risk plaintiff may have assumed and whether the defense had been sufficiently established to bar recovery.

IV. Plaintiff was 39 years old when injured on May 31, 1962. Trial of this case began March 17, 1965.

Over defendant's objections the mortality table showing the normal life expectancy of a person plaintiff's age to be 33.07 years was received. This is the listed normal expectancy of a person 39 years old. Plaintiff was nearly three years older at time of trial. The court's instruction was based on expectancy at 39. Defendant objected thereto. The instruction stated that the evidence was received "solely for the purpose of aiding you in determining the extent, in time, of the permanent injuries, if any, received by the plaintiff as the result of the accident herein involved."

The instruction as given followed Iowa Uniform Instruction No. 3.16a published by the Iowa State Bar Association, except for the insertion of plaintiff's expectancy. Except for the use of the wrong figure in this case the instruction is not attacked. In this case reference to plaintiff's age at the time of injury caused duplication of the elements making up plaintiff's measure of damage.

Plaintiff's claim as submitted to the jury included: (We summarize)

1. Medical and hospital expense.

2. Loss of time "in the past."

3. Pain and suffering "in the past and up to the present time."

4. Disfigurement.

5. Functional disability, if any, including impairment of earning capacity in the future.

6. Referred to damage to personal property not material here.

The proper use of the mortality table has been approved many times. The elements constituting plaintiff's measure of damage were within the issues. However, the first four brought the computation of damages for plaintiff's personal injury up to the date of trial and use of plaintiff's expectancy at the time of his injury caused duplication. If plaintiff's damages are separately computed to the date of trial the projection of damage into the future should be from the date of trial.

A physician, called by defendant, examined plaintiff and testified that he found some scarring but no functional disability.

From the record we doubt that the use of the wrong figure in the mortality table instruction had any effect on the amount of the jury's verdict. We would be reluctant to reverse on that ground alone, but we caution that when a claim for damage is projected into the future care should be used to avoid duplication.

V. For the reasons stated the case is reversed and remanded for a new trial.—Reversed and remanded.

GARFIELD, C. J., and LARSON, THORNTON, STUART and MASON, JJ., concur.

BECKER, MOORE and RAWLINGS, JJ., dissent.

BECKER, J.—I respectfully dissent.

We here extended the doctrine of assumption of risk to yet another area of the law. We do that at a time when legal scholars are nearly unanimous in condemnation of the doctrine. Michigan has limited the doctrine strictly to cases where the risk is expressly contractually assumed and to master and servant cases. New Jersey by unanimous opinion first sharply limited the doctrine and later altogether eliminated it from the New Jersey law.

It would be presumptuous in this dissent to attempt to analyze the problems raised by this doctrine and the valid reasons for strictly limiting its application (if not for entire abandonment). The analysis by the New Jersey Supreme Court, Weintraub, Chief Justice, in Meistrich v. Casino Arena Attractions, Inc., 31 N. J. 44, 155 A.2d 90, 82 A. L. R.2d 1208, followed by the per curiam opinion by the same court in McGrath v. American Cyanamid Co., 41 N. J. 272, 196 A. 238, and by the Supreme Court of Michigan in Felgner v. Anderson, 375 Mich. 23, 133 N.W.2d 136, are both exhaustive and compelling. The reasoning is as applicable to our Iowa law as it is to the New Jersey and Michigan law. Ironically the New Jersey opinion uses two of our Iowa cases in tracing early developments in the master and servant field. Thus, it seems best to neglect a long historic review of the doctrine in Iowa and draw attention to some of the opinions of legal scholars.

First the problem: what do we mean when we say assumption of risk? Restatement of the Law, Torts 2d, Volume 2, section 496A, after stating that the term is surrounded by much confusion, gives four definitions. However, the determination by the New Jersey and Michigan courts that assumption of risk essentially has only two different meanings is more realistic. As expressed in the valuable note found at 82 A. L. R.2d 1218, 1237: "[T]he term 'assumption of risk' may be used by the courts in two different meanings: (1) where the injured person acted reasonably in assuming a particular risk, and the defense constitutes a denial of defendant's negligence, the term is used in its 'primary meaning'; (2) where the injured person acted unreasonably in assuming a particular risk, and the defense of assumption of risk coincides with the defense of contributory negligence, the term is used in its 'secondary meaning.'"

In 61 Yale Law Journal 141, Professor James said: "(1) In its primary sense the plaintiff's assumption of a risk is only the counterpart of the defendant's lack of duty to protect the plaintiff from that risk. In such a case plaintiff may not recover for his injury even though he was quite reasonable in encountering the risk that caused it. Volenti non fit injuria. (2) A plaintiff may also be said to assume a risk created by defendant's

breach of duty towards him, when he deliberately chooses to encounter that risk. In such a case, except possibly in master and servant cases, plaintiff will be barred from recovery only if he was unreasonable in encountering the risk under the circumstances. *This is a form of contributory negligence."* (Emphasis added.)

Prosser, Torts, Second Ed., section 55, page 305, has said: "[A]ssumption of risk serves no useful purpose, since it introduces nothing that is not fully covered either by the idea of an absence of duty on the part of the defendant, or by that of contributory negligence of the plaintiff."

Harper and James, The Law of Torts, Volume 2, section 21.8, suggests that, except for express assumption of risk, the term and the concept should be abolished.

All of the foregoing may be found cited in 82 A. L. R.2d 1218, 1227 et seq. Further the Iowa Law Review, Volume 51, page 247 et seq., takes the same tack. There we find such citations as "The concept is cloudy, and although lawyers confess their inability to comprehend, yet they trust that a jury will understand what they do not, and somehow successfully apply it." 73 N. J. Law Journal 346. This note supports the statement in the Iowa Law Review: "Because the doctrine has grown beyond the bounds of its original meaning, judges, lawyers, and jurors have become thoroughly confused."

It is hoped that the foregoing quotes, while not exhaustive, are sufficient to bolster the position that the doctrine should not be extended, and that it should not be made applicable to cases involving contributory negligence.

In struggling with the confusion raised by this doctrine we have noted: "This is an ordinary case of negligence and contributory negligence and the matter of assumption of risk should not be injected into the case." Holmes v. Gross, 250 Iowa 238, 251, 93 N.W.2d 714.

In Shatto v. Grabin, 233 Iowa 46, 51, 6 N.W.2d 149, we said: "Edwards v. Kirk, 227 Iowa 684, 288 N.W. 875, involves the doctrine of assumption of risk. As therein noted, except in cases arising out of some contractual relation such as master and servant and in certain cases where, by reason of the char-

acter of the defendant's act, contributory negligence does not bar recovery, the principle of assumption of risk operates in a rather strictly limited field."

Thus it would seem that the doctrine has for the most part been restricted by us to cases brought under our gratuitous guest statute, and those involving a master-servant or principal-agent relationship. Bohnsack v. Driftmier, 243 Iowa 383, 390–394, 52 N.W.2d 79; Hansen v. Nelson, 240 Iowa 1298, 1304, 39 N.W.2d 292; and White v. McVicker, 216 Iowa 90, 94, 246 N.W. 385.

Having noted some of the authorities, what of the facts of this case? Had the defendant here made a full and fair disclosure to his prospective tenant that the premises were equipped with a faulty and dangerous gas hot water heater which had recently exploded and had not since been repaired (the jury to reach its verdict had to find defendant knew these facts), and if, after receipt of this knowledge, plaintiff rented and occupied the house, assumption of risk might be applicable as a result of express contract. A better way to outline the principle, if it is to be applied, would be to say that in such a situation the defendant owed no duty after such warning.

But defendant did not say anything at the time he rented the premises to plaintiff. This was clearly a latent defect which plaintiff could not reasonably be expected to discover until after he moved in with his family. As a matter of evidence the property was rented on Thursday, the family moved in on Friday, and the condition was not discovered until Saturday when the man came to hook up the heater.

With this knowledge defendant can and properly does urge contributory negligence. He was entitled to an instruction on contributory negligence. The court instructed:

"As applied to this case, if you find from all of the evidence that the plaintiff had knowledge of a defective and dangerous condition of the gas heater before his injuries and failed to use ordinary care under all of the circumstances, he would be guilty of negligence, and cannot recover herein, and your verdict should be for the defendant. Further, if you find from all of the evidence herein that the plaintiff had the said

Stanley light said heater and continued using the same, under all the circumstances shown by the evidence, and used the care of an ordinarily prudent person, then you are directed to return your verdict in accordance with all other instructions herein."

Thus the real concept referred to at length by the authorities cited in this dissent was fully covered in the instruction on contributory negligence. Assumption of risk should not be added.

To state the proposition in another way is to reject it; i.e., at the minimum defendant had a duty to disclose the dangerous condition of the heater when he rented the property; if we apply assumption of risk we say this duty was negated or satisfied, or relieved, when plaintiff discovered for himself that the gas heater was defective and dangerous, because he *voluntarily* assumed the risk. He should have (1) spent his own money to do defendant's work or (2) not used the heater or (3) moved out. Failing to do this the defendant is relieved of liability *not* because of contributory negligence but because of the absence of a primary duty on part of defendant. This conclusion seems preposterous. But it is the only conclusion available, unless we take the other tack and say defendant is entitled to a third instruction on contributory negligence but couched in new and different terms.

A quote from 51 Iowa Law Review, 247, 250, deserves comment. "This review of decisions reveals that a court may react in one of three ways when faced with a defense of assumption of risk. It may distinguish the case from others on the particular facts involved, basing its decision on a technical distinction, thus delaying the basic question concerning the value of the assumption of risk concept. Alternatively, a court may examine in detail the history of the assumption of risk doctrine and seek to clarify the problem by one of two methods —eliminating the language entirely, or severely limiting its applicability."

The writer overlooked a fourth reaction! The court may apply and extend the doctrine despite the lack of solid reason for its applicability. Such seems to be the action here.

It is not suggested that we now eliminate assumption of

risk as a defense. It is only suggested that we not broaden it. In restricting the concept to where it now is, we can at least start on the road to understandable delineation of its applicability.

It is interesting to note that Wisconsin, which does not have the guest statute, has eliminated assumption of risk in automobile cases. McConville v. State Farm Mutual Automobile Ins. Co., 15 Wis.2d 374, 384, 113 N.W.2d 14, stating: "The unreasonable assumption of risk constitutes negligence."

We have the guest statute and have applied the assumption of risk doctrine to that type case under certain factual situations. Again, it should be emphasized that it is not here proposed to abandon this concept in that situation. That question is not now before us.

The objection to the mortality table is good but does not appear to be enough to call for reversal. The life expectancy difference is only 1.78 years out of a 31.29 year life expectancy. However, if the case is to be reversed it should be reversed on that ground, not for failure to instruct on assumption of risk. I would affirm.

MOORE and RAWLINGS, JJ., join in this dissent.