Gunnar A. OSTERLING, Appellant,

v.

Dale STURGEON, Appellee.

No. 52760.

Supreme Court of Iowa.

Feb. 6, 1968.

McDonald, Sayre & McDonald, Cherokee, for appellant.

Miller, Miller & Miller, Cherokee, for appellee.

GARFIELD, Chief Justice.

This is an action in equity by Gunnar A. Osterling, landlord, to collect rent on the west half of the first floor and basement of a business building in Cherokee and foreclose the contractual lien therefor. Defense of the tenant, Dale Sturgeon, was that a flood of the Little Sioux River in April, 1965 in effect destroyed the building, rendered it unfit for the use contemplated by the parties and relieved defendant from paying rent. Following trial to the court this defense was sustained and plaintiff appeals from the adverse decree.

Unless we are to disregard the applicable law we must reverse.

I. On July 6, 1956 plaintiff-owner leased the premises to defendant for ten years commencing September 1, 1956. The entire building was 120 feet wide, facing Main Street, by 121 feet deep. Incidentally the building, built in 1952, cost about $80,000, the land on which it is located $10,000 and an addition built at the time the lease was made cost about $22,000.

The lease provides: "these premises are to be used for a bowling alley, with a bar, refreshment and lunchroom in connection therewith. * * * The Tenant agrees to use the said premises for no other purposes * * * and activities related to bowling and not to underlet the same * * * nor assign this lease without the written consent of the Landlord * * *."

The lease contains no covenant by the lessor to repair nor for abatement of rent in the event of casualty to the premises. It is not claimed any statute so provides.

There was some delay in defendant's occupancy of the premises for which an agreed adjustment in the rent was made. Defendant first occupied them with his bowling alley in operation in October, 1956 and paid the agreed rent up to and including April, 1965. The monthly rent was $430 and the total unpaid rent at the end of the term of the lease was $6,880.

The Little Sioux River flows through Cherokee a little more than a quarter mile east of the building. In early April, 1965 the river rose to an unprecedented height of 27.2 feet, causing the worst flood in the city's history. Nearly 350 residents were forced from their homes, 250 national guardsmen from four cities were called out, and boats were used for travel in the flooded area.

For the first time since the leased premises were built water covered the floor on which defendant installed his bowling lanes. The basement, under the front 40 feet of the building, was filled and the water was three feet deep on the bowling alleys. It was five to seven days before it receded and the alleys were damaged beyond repair. They were defendant's property, installed by him. The building itself was not damaged except for the paint and could have been occupied in about a week after the flood.

There had also been a lesser flood in 1962 when water entered the basement of the premises but none entered the bowling alley part. Still lesser floods occurred in 1960 and 1961 but none in 1963, 1964 or 1966.

Defendant testified he was unable to obtain a loan from the Small Business Administration with which to install new bowling lanes in the leased premises and in any event deemed it unwise to do so for fear of future flood damage. He then constructed a new building where he was operating a bowling alley at the time of trial in October, 1966. Efforts by both parties to find a renter for the leased premises proved unsuccessful athough the east half of the building remained occupied by a tenant.

We deem it unnecessary to set out facts bearing on issues no longer in the case as the appeal stands.

■ II. At common law injury to or deterioration of the leasehold or building thereon by flood, fire or other casualty, under such a lease as we have here did not relieve the tenant from his obligation to pay rent. Harris v. Heackman, 62 Iowa 411, 17 N.W. 592, 593; Woodbury Company v. Wm. Tackaberry, 166 Iowa 642, 645, 148 N. W. 639; Gamble-Robinson Co. v. Buzzard, 8 Cir., Iowa, 65 F.2d 950, 952 and citations; Standard Industries, Inc. v. Alexander Smith, Inc., 214 Md. 214, 133 A.2d 460, 61 A.L.R.2d 1433, 1441, and citations; 1 Tiffany, Landlord and Tenant, p. 1191.

■ Defendant contends, and it may be conceded, where the lease is for only a portion of a building its destruction terminates the tenant's obligation to pay rent. Gamble-Robinson Co. v. Buzzard, supra, at p. 953 and citations; 1 Tiffany, Landlord and

Tenant, pp. 1196–1197; 32 Am.Jur., Landlord and Tenant, sections 494, 495.

■ This exception, just referred to, to the rule has been applied and the tenant relieved from paying rent only where it appears the leasehold was totally destroyed, not where it was merely injured or damaged. "Total destruction, perhaps, does not mean such a destruction as does not leave one stone lying upon another, but it must be such as destroys the leased property in its character as a room or a building." Humiston, Keeling & Co. v. Wheeler, 175 Ill. 514, 51 N.E. 893, 894; Gamble-Robinson Co. v. Buzzard, supra, and citations at p. 953 of 65 F.2d. See also Standard Industries, Inc. v. Alexander Smith, Inc., supra, 214 Md. 214, 133 A.2d 460, 61 A.L.R.2d 1433, 1441 and citations; Scharbauer v. Cobean, 42 N.M. 427, 80 P.2d 785, 118 A.L.R. 102 and citations; Chase & Co. v. Fleming, 143 Iowa 452, 455, 121 N.W. 1055.

"In order that the liability for rent thus cease by reason of the destruction of the building or of the apartment leased, it is necessary that the premises leased be entirely destroyed, and the liability for rent continues as before, if the building or apartment leased still exists, although it be necessary to repair it in order that it be tenantable." 1 Tiffany, Landlord and Tenant, p. 1197. See also 52 C.J.S. Landlord and Tenant § 486b, p. 256.

■ The slight damage caused by this flood to the portion of the building leased to defendant here falls far short of such destruction of the leasehold as relieves him from his obligation to pay the rent stipulated in the lease. No authority has come to our attention which sustains such a result.

As indicated, the building was not damaged structurally and the only damage to it of any kind, as we understand the record, was to the paint on the lower portion of the inside walls. The floor of the building was concrete, joists were steel and the walls were of clay and cement block and brick. Physi-

cal damage from the flood was almost all confined to defendant's own property. Plaintiff, of course, was in no way at fault or responsible for this unprecedented flood.

Iowa decisions which lend support to the conclusion just stated include Benson v. Iowa Bake-Rite Co., 207 Iowa 410, 412–416, 221 N.W. 464, which approves what Chase & Co. v. Fleming, supra, holds is meant by "total or partial destruction" of the leasehold; Woodbury Company v. Tackaberry, supra, 166 Iowa 642, 647, 148 N.W. 639; Healey v. Tyler, 150 Iowa 169, 129 N.W. 802.

The instant case is considerably stronger for plaintiff than O'Neal v. Hawkeye Lbr. Co., 185 Iowa 452, 170 N.W. 792, where the leased premises were to be used only for operating a garage and amusement park. By implication the lessee was authorized to erect such buildings as in its judgment were required to carry on such business. When the lease was executed the lessee owned such buildings. They were burned without lessee's fault and the burning made the premises untenantable as a garage and amusement park. The lessee resisted payment of rent because the lease provided it should stop if "said premises are untenantable by reason of fire through no fault of the tenant." We upheld the landlord's right to collect rent on the ground the buildings owned by the tenant were not part of "said premises."

■ So here it cannot be said defendant's separate property was part of the leasehold. In all probability he would have strenuously resisted such a claim if asserted against him.

III. The trial court placed considerable reliance upon Wattles v. South Omaha Ice & Coal Co., 50 Neb. 251, 69 N.W. 785, 36 L.R.A. 424 (1897) which defendant says is a leading case. The chief justice and two of the other five members of the Nebraska court dissented from the portion of the opinion here relied on which expresses a definite minority view. In any event we do not find the facts of the case make it applicable here.

Wattles as landlord leased 20 acres of ground, part of which was covered by water, together with the buildings thereon, for harvesting ice formed on the water and storing it in the buildings. During the term of the lease, in August, the buildings on the leased premises were completely destroyed and rendered entirely valueless by a hurricane. Conceding that under the common law the tenant would not be relieved from paying the entire rent reserved, the opinion formulates the rule that where a substantial portion of leased premises is destroyed without the lessee's fault he is entitled to an apportionment of the rent thereafter, in the absence of an express assumption by him of the risk of such destruction.

As we have tried to point out, the slight damage from the flood to the leased premises here falls considerably short of destruction of even a portion thereof. The cited Wattles case is not this case.

■ IV. Defendant argues and the trial court felt it would be inequitable and indeed unconscionable to require defendant to pay the agreed rent for the comparatively small portion of the term remaining after occurrence of the flood. We find no inequitable conduct on plaintiff's part and insufficient basis for relieving defendant from his obligation to pay rent.

As stated, the lease provides in substance that defendant use the premises only for a bowling alley and related purposes unless plaintiff gave written consent to their use for other purposes. From this defendant pleaded plaintiff impliedly and expressly warranted the premises were not subject to flooding from the Little Sioux River and these warranties were breached. The trial court held defendant failed to establish that plaintiff breached any implied or express warranty. Defendant does not attempt to sustain the result reached by the trial court by urging there was such breach.

■ Although the warranty issues are not now before us we may observe, in view of the argument on the equities of the case,

"The fact that the lease designates the use to which the premises are to be put does not imply a warranty that they are or will continue to be fit for such use." 51 C.J.S. Landlord and Tenant § 304, p. 965. To like effect are Rogers v. Rob Roy Plantation Co., 208 Ark. 429, 186 S.W.2d 661; 140 West Thirty-Fourth St. Corp. v. Davis, 158 Misc. 470, 285 N.Y.S. 957, 960; Girard Trust Co. v. Tremblay Motor Co., 291 Pa. 507, 140 A. 506, 511. See also Boyer v. Commercial Bldg. Inv. Co., 110 Iowa 491, 493, 81 N.W. 720; Kutchera v. Graft, 191 Iowa 1200, 1209, 184 N.W. 297, 26 A.L.R. 1257, 1264–1265 and citations.

No claim of fraud on plaintiff's part was pleaded nor is there evidence thereof. Before the lease was executed the parties considered and discussed the possibility the premises might be flooded. Plaintiff told defendant there had never been water on the first floor of the building. The evidence is the statement was true when made. Defendant had resided in the immediate vicinity of Cherokee most of the time for 25 years and was familiar with the Little Sioux River during that time. He was born and reared in a small town 8 miles east of Cherokee on the same primary highway the leased building faces and knew water from the river had once run over the highway. As indicated, the lease contains no provision for its termination nor for abatement—or apportionment—of the rent in the event of flooding.

■ There was nothing inequitable or unconscionable about this lease when made. However it is argued it became such by the damage to the bowling alley from the flood. The argument is sufficiently answered by this from 17A C.J.S. Contracts 1963, § 296 (3), pages 97–98: "Likewise, the court may not alter a contract for the benefit of one party and to the detriment of the other or others, or make a new contract at the instance of one of the parties, or, by a process of interpretation, relieve one of the parties from the terms to which he voluntarily consented, or, because of equitable considera-

tions, obviate objections which might have been forseen and guarded against, * * *"

Smith v. Stowell, 256 Iowa 165, 172, 125 N.W.2d 795, 799, and B-W Acceptance Corp. v. Saluri, 258 Iowa 489, 496, 139 N.W.2d 399, 403 quote the foregoing language with approval. See also 17A C.J.S. Contracts § 296(4), pages 98–105.

Plaintiff is entitled to decree as prayed. For entry thereof the cause is

Reversed and remanded.

All Justices concur except BECKER, J., who concurs in result.