Richard G. KNAPP, Jr., Appellant,

v.

David P. SIMMONS, Appellee.

No. 83–256.

Supreme Court of Iowa.

Feb. 15, 1984.

George W. Wittgraf of McDonald, Sayre & Wittgraf, Cherokee, for appellant.

J.R. Miller of Miller, Miller, Miller & Green, Cherokee, for appellee.

Considered by HARRIS, P.J., and McGIVERIN, LARSON, SCHULTZ and CARTER, JJ.

SCHULTZ, Justice.

Plaintiff, Richard G. Knapp, Jr., appeals from the district court's grant of summary judgment to defendant, David A. Simmons, in a tort action arising from the poisoning of his cattle on land leased from the defendant. Because we determine that trial court erred in granting summary judgment, we reverse.

The facts developed in the district court proceedings are uncomplicated. Sometime in October of 1979, Simmons entered into an oral lease with Knapp allowing plaintiff to graze his cattle on defendant's cornstalks. Under this agreement, Knapp paid $2.50 per acre for an unspecified number of acres that had been planted in corn even though the cows had unfettered run of defendant's entire 320 acres. The parties had entered into similar arrangements for the three preceding years. Prior to turning out the herd on November 1, 1979, Knapp drove around the perimeter of the premises and also walked the fences to make sure they were stock tight. No other inspection apparently was made.

On November 13, 1979, Simmons informed Knapp that his cattle were sick and dying. A veterinarian was called and arrived about an hour later. He concluded that the cows had been poisoned by eating Furadan and had died of Furadan toxicosis. The parties in searching the premises found cattle milling around an open sack of Furadan and noted several hoof prints on the bag. The record does not disclose the location of the Furadan on defendant's premises.

On September 30, 1980, Knapp filed a petition against Simmons setting out the lease arrangement and alleging that "Defendant was negligent in the operation and maintenance of his land by allowing Furadan to be present when the Plaintiff's cattle were grazing there." The action was relatively dormant until Simmons propounded interrogatories to plaintiff sometime in January of 1983. Plaintiff's answers revealed no further facts than those previously set out. On January 7, 1983, two days after receiving the answers, defendant moved for summary judgment.

In support of the motion, defendant argued that except for latent defects existing at the time the lease was consummated, the landlord was not liable for the condition of the premises nor does he undertake that they may be safely used for the purposes for which they were leased. Plaintiff, on the other hand, contended that the landlord was liable for failing to turn over or maintain the premises in a manner suitable for the rental purpose.

The court rejected plaintiff's suitability theory and stated that no assurances were given that the land was either inspected or safe nor was there a claim defendant knew or should have known of any latent defects or dangers on the property. The court went on to note that "Plaintiff has no evidence to show where the Furadan bag came from, who it belonged to or how long it was on the property." It concluded that defendant should not be put to the expense of trial when such vital evidence did not exist and granted summary judgment for defendant. Plaintiff appealed.

On appeal, he claims: (1) this court should adopt a rule that leases of agricultural land carry an implied warranty of suitability for a particular purpose; (2) even if there is generally no duty running from an agricultural landlord to his tenant, such a duty arises here because Knapp and Simmons had joint control over the premises where the injury occurred; and (3) there was a genuine issue of material fact as to whether the poisoning of plaintiff's cattle was caused by a latent defect existing at the time the lease was entered into.

Prior to addressing the specific issues raised by appellant, we will further examine the nature of the action and the trial court's grant of relief by way of summary judgment. We shall also review principles of law concerning motions for summary judgment and the court's ruling.

 The pleadings revealed an action in tort. In particular, plaintiff pled that an oral lease allowed his cattle to feed on cornstalks and that while they were grazing they came in contact with Furadan. He alleged negligence on the part of the landlord arising from the operation and maintenance of his land. It is well-settled that neglect of duty imposed by a lease is a tort for which an action ex delicto will lie. *Duke v. Clarke*, 267 N.W.2d 63, 68 (Iowa 1978). This duty, arising from the contract, may result from an implied warranty. *Id.* The determination as to whether the contract supports the asserted duty is made by the trial court as a matter of law. *Porter v. Iowa Power and Light Co.*, 217 N.W.2d 221, 228 (Iowa 1974). When such a duty has been established, compliance with the duty is determined by the trier of fact.

In granting defendant's motion for summary judgment, the trial court rejected any duty of the lessor based on an implied warranty of suitability of the premises. The trial court did recognize that a landlord has a duty to warn the tenant of known latent defects but did not address his duties in situations of joint control over the leased premises.

■ Summary judgment is proper when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c). The burden of showing the nonexistence of a material fact is upon the moving party. *Colonial Baking Co. of Des Moines v. Dowie*, 330 N.W.2d 279, 282 (Iowa 1983). While an adverse party generally cannot rest upon his pleadings when the moving party has supported his motion, summary judgment is still not proper if reasonable minds could draw different inferences and conclusions from the undisputed facts. *Id.* In this respect, summary judgment is functionally akin to a directed verdict, *Sherwood v. Nissen*, 179 N.W.2d 336, 339 (Iowa 1970); every legitimate inference that reasonably can be deduced from the evidence should be afforded the nonmoving party, and a fact question is generated if reasonable minds can differ on how the issue should be resolved. *Henkel v. R & S Bottling Co.*, 323 N.W.2d 185, 187–88 (Iowa 1982).

■ I. Plaintiff first urges this court to judicially adopt a rule that liability of a lessor may be based upon breach of an implied warranty of suitability of agricultural land for a particular purpose. In the past, we have soundly rejected the theory that the landlord impliedly warrants that leased property will be suitable for the purpose for which it is rented. *See Osterling v. Sturgeon*, 261 Iowa 836, 842, 156 N.W.2d 344, 348 (1968) (In adjudicating a claim for rent based on the lease of premises for a bowling alley, the court citing C.J.S. stated: "The fact that the lease designates the use to which the premises are put does not imply a warranty that they are or will continue to be fit for that purpose."); *Kutchera v. Graft*, 191 Iowa 1200, 1209, 184 N.W. 297, 301 (1921) (Similarly, in affirming the denial of liability based on the negligence in the leasing of farmland, the court said: "[T]he lessor, in the absence of fraud or of any agreement to that effect, is not liable to the lessee for the condition of the premises, and that the premises may be safely used for the purposes for which they were intended").

Nevertheless, plaintiff insists such an implied warranty is appropriate. Essentially, he points to the narrowing of the doctrine of caveat emptor in the sale of goods, Article 2 of the Uniform Commercial Code, and also the decisions of this court holding there is an implied warranty of habitability in residential leases. *See Mease v. Fox*, 200 N.W.2d 791 (Iowa 1972) and *Duke v. Clark*, 267 N.W.2d 63 (Iowa 1978). In *Mease*, we specifically limited the implied warranty to leases of residential dwellings. *Id.* at 796. Moreover, the Uniform Residential Landlord and Tenant Law, Iowa Code Chapter 562A, which codified and further delineated *Mease*, expressly excludes agricultural leases from coverage. *See* § 562A.5(7) (excluding from application of the chapter any "[o]ccupancy under a rental agreement covering premises used by the occupant primarily for agricultural purposes"). In sum, plaintiff's position is not supported by either our case law or statutory enactments.

Additionally, important policy considerations dictate against judicial adoption of plaintiff's view. If an individual rents cropland, and the land is infested with insects or is subsequently flooded, would he have a cause of action for a breach of an implied warranty for a particualr purpose? Many variables, difficult of proof and beyond a lessor's control, could possibly subject him to liability if leases carried an implicit warranty that they were suited for a particular purpose.

We conclude that the trial court was correct when it rejected, as a matter of law, any duty of a lessor arising from an implied warranty of suitability.

II. Plaintiff also claims that summary judgment was not appropriate to resolve the issue of the landlord's duty to disclose latent defects. Specifically, plaintiff asserts, and we agree, there was a genuine issue of material fact as to whether the poisoning of the cattle was caused by a latent defect existing at the time the lease was consummated.

■ The question of Simmon's negligence grounded on a violation of his duty to warn Knapp of hidden or latent defects was considered and disposed of by the court. Indeed, the lessor squarely placed this issue before the court in his motion for summary judgment when he cited *Wright v. Peterson*, 259 Iowa 1239, 146 N.W.2d 617 (1966), and argued the absence of a latent defect in the leased premises. In *Wright*, we indicated, in the absence of control by the lessor, "that the landlord is not liable for injuries to the tenant occurring on the premises," except "in regard to hidden or latent defects which existed at the time the lease was consummated and where the defect was known to the lessor (or through the exercise of reasonable care the lessor should have known of it) and he actively concealed it from the tenant or failed to call it to his attention." *Id.* at 1244, 146 N.W.2d at 620. The exception spelled out in *Wright* clearly places a duty upon a lessor to disclose known hidden or latent defects on rented premises. The trial court disposed of any claim based on this duty when it stated that no showing was made that defendant knew or should have known of a latent defect. Thus, the court concluded as a matter of law that defendant established his burden to show no genuine fact issue existed concerning whether defendant breached his duty to disclose hidden or latent defects to plaintiff. We do not agree.

■ Generally, issues of negligence and proximate cause—the resolution of which requires determination of the reasonableness of the acts and conduct of the parties under all the facts and circumstances of the case—are ordinarily not susceptible of a summary adjudication but should be resolved by trial. *Daboll v. Hoden*, 222 N.W.2d 727, 734 (Iowa 1974). In an unusual case the facts may be such that trial court could correctly conclude in a summary judgment proceeding that negligence has been established or negated as a matter of law. This, however, is not such a case.

In granting summary judgment, the trial court primarily and incorrectly relied on plaintiff's lack of personal knowledge and his inability to point to the availability of direct evidence. Specifically, it reasoned that plaintiff could not show where the Furadan bag came from, who it belonged to or how long it was on the property, and then concluded there was no proof that defendant knew of any latent or hidden defects. This conclusion ignores the inferences that a trier of fact reasonably could make from the discovery of the poisonous substance on the premises a few days after commencement of the lease. Reasonable minds could infer that a bag containing a toxic insecticide would not suddenly appear in an open field at the end of a growing season and consequently had been there for some time. While we have no facts about the exact location or visibility of the bag, reasonable minds could infer from common experience that the bag was small enough to qualify as a latent defect. The factfinder could also infer that the owner and lessor of cropland knew or should have known of the presence of poisonous material in his field. Additionally, in an affidavit in support of his resistance to summary judgment, plaintiff alleged that "[D]efendant maintained a debris pile on the premises, which pile had been covered by corn cobs in 1976, 1977 and 1978; but that said corn cobs had been 'washed away' or otherwise removed from that pile in 1979." Although plaintiff did not allege that the Furadan bag was hidden in this pile of debris, we think, viewing the facts in the light most favorable to plaintiff, the nonmoving party, *Sandbulte v. Farm Bureau Ins.*, 343 N.W.2d 457 (1984), a genuine issue of material fact existed as to whether the Furadan was a latent defect which was not readily discoverable and which would allow plaintiff to recover damages for his poisoned cows.

■ In summary, we conclude a genuine issue of fact existed on the possible negligence of defendant in failing to warn plaintiff of a latent defect on the leased premises. Therefore, summary judgment for defendant was inappropriate, and the

matter must be remanded for a trial on this issue.

III. Plaintiff also raises an additional reason why summary disposition was erroneous. He claims that, by virtue of joint control of the premises, the lessor owed plaintiff a duty to operate and maintain the premises in a reasonably safe condition. This issue was not raised in district court either by specific pleading or by resistance to the summary judgment. Thus, the trial court had no opportunity to address the claim. Since the case is remanded for trial, this issue in all probability will be litigated. Thus, we shall briefly address it.

In claiming the existence of additional duties where the lessor and lessee have joint control of the premises, plaintiff relies on Iowa case law involving residential leases. Basically, these cases hold that where the landlord retains control or the landlord and tenant have joint control over a part of the premises, liability attaches if an injury or damage to property occurs because that part of the premises was in a defective condition or negligently maintained. *See e.g., Montgomery v. Engel*, 179 N.W.2d 478 (Iowa 1970) (Improper for court to direct verdict where evidence showed owner and tenant had joint control over stairway where injury occurred and owner failed to comply with minimum housing ordinance requiring a handrail); *Coleman v. Hall*, 161 N.W.2d 329 (Iowa 1968) (Improper for court to direct verdict where owner had common law duty to exercise reasonable care to maintain part of premises he controls in reasonably safe condition and fact question generated on whether landlord negligently maintained back stairway to apartment building so as to render it ineffective as a means of escaping from a fire); *Bostian v. Jewell*, 254 Iowa 1289, 1295–96, 121 N.W.2d 141, 145 (1963) (Higher degree of care required in landlord-tenant, common use area than in ordinary business invitee situation and in absence of proof to contrary, landlord assumed to have retained control over premises used in common by different occupants and is subject to liability for injuries resulting from his failure to keep such premises reasonably

safe and his duty extends to open and obvious defects as well as hidden ones). There are no similar Iowa cases imposing liability on a farm landlord based on his retention of control over the leased premises.

 Nonetheless, we think plaintiff's position is reasonable. In fact, the circumstances of this case are similar to those presented in *Brown v. City of Sioux City*, 242 Iowa 1196, 49 N.W.2d 853 (1951), where we held that a landlord incurs liability if he negligently uses his adjacent premises in a manner harmful to the tenant's use of the rented premises. In *Brown*, the tenant was a beekeeper who rented property from Sioux City adjacent to the city airport for the purpose of keeping bees. The city sprayed its adjoining property with a chemical substance that subsequently killed the bees when they wandered on the retained premises. Given these facts, we held that the tenant stated a cause of action against the landlord city based on a breach of its duty to take reasonable care in the use of the retained premises so as not to cause damage to the tenant in his occupation of the part leased. *Id.* at 1200, 49 N.W.2d at 855. We reached this conclusion despite the absence of any evidence showing that the poison actually contaminated the rented premises. Specifically, we stated:

> We are of the opinion that the evidence was sufficient without testimony that the spray reached the grove rented by plaintiff. The city rented the land to plaintiff for the express purpose of keeping bees. The city knew the bees would not be confined to the three-acre plot it rented to plaintiff.... The city knew the bees would work out of the apiary and onto the adjoining fields. When the city, as plaintiff's landlord, sprayed a poison that would kill bees on the land adjoining the [rented] plot without at least notice to plaintiff it should have foreseen the ensuing damage to plaintiff.

*Id.* at 1202–03, 49 N.W.2d at 856. *See also* 52 C.J.S. *Landlord and Tenant* § 423(4)(a)

(1968) ("where the landlord leases only a portion of the premises to a tenant and retains the remainder under his control, he is bound to use reasonable and ordinary care in managing the part over which he retains control.... His obligation is an obligation of reasonable care only and he is not liable where no injury to anyone was reasonably anticipated or the defective condition was not discoverable by a reasonable inspection").

Here, the record is not clear as to the precise terms of the lease or the extent of the lessor's control over the premises. Knapp was to pay rent for corn acres but his cattle had the run of the entire farm. We are left in the dark about the landlord's retention of control. If, as in *Brown,* the evidence sustains a finding of control by Simmons over that part of the premises where the toxic substance was located, he was bound to use reasonable and ordinary care in his management of that part.

REVERSED AND REMANDED.